**David STOKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 70031.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 20, 1989.

Rehearing Denied Jan. 17, 1990.

**4**

Ron Felty, Gary A. Taylor, Lubbock, for appellant.

Terry D. McEachern, Dist. Atty. and Robert W. Kinkaid, Jr., Asst. Dist. Atty., Plainview, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A., Penal Code § 19.03(a)(2). After finding the appellant guilty, the jury returned affirmative findings to the special issues under Article 37.071, V.A.C.C.P. Punishment was assessed at death.

Appellant raises twelve points of error. He challenges: the sufficiency of the evidence to sustain a guilty verdict; the sufficiency of the evidence to support an affirmative finding to special punishment issue number two; the admission of a shell casing found pursuant to an inventory search; the failure of the State to establish a chain of custody for evidence found at the scene of the crime; the admission of a weapon seized by a private citizen; the failure of the trial court to grant a mistrial after the admission of extraneous offenses; the admission of the extraneous offenses as being prosecutorial misconduct, the cumulative effect being to deny appellant a fair trial; the testimony of a State's witness who was not listed on the witness list; the failure to appoint an expert witness to testify to the effect of the parole laws; the failure to appoint an expert witness trained in psychology or psychiatry; the failure to grant a mistrial after a comment on the appellant's right to remain silent; and the cumulative effects of the errors committed during trial. We will affirm.

In his third point of error, appellant contends the evidence is insufficient to sustain his conviction. Specifically, appellant argues that the evidence is insufficient to prove that he intentionally caused the

death of David Manrrique. Additionally, appellant argues that the evidence is insufficient to prove beyond a reasonable doubt that he was in the course of, or attempting to commit a robbery of the victim at the time of the murder. We will set out the relevant facts upon which the jury could have based their conviction.

Appellant's conviction is based wholly on circumstantial evidence. Gracie Sanchez, an assistant manager of Allsup's Convenience Store, testified that she arrived at the store on November 9, 1986, at approximately 5:50 a.m. to begin the 6:00 shift. She noticed a couple of cars in the parking lot but could not see anyone inside. Two customers were attempting to purchase gasoline but were not being assisted by the store personnel. She entered the store to wait on the customers and noticed that both cash registers were open. She then discovered that the back door was unlocked. Upon further investigation, she discovered the victim, David Manrrique, lying on the floor in a puddle of blood. Ms. Sanchez called the police and her manager.

Upon receiving a telephone call from Ms. Sanchez, Sandra Back, the manager of Allsup's Store, went to the store. After arriving at the store, Ms. Back balanced the cash registers to determine if any money was missing. After the registers were balanced, Ms. Back discovered that approximately ninety six dollars was missing. Ms. Back testified that she had checked on the store at approximately 12:45 a.m. that morning and at that time David Manrrique was alive and working his shift.

Dr. Kitten Sue Kveton testified that at 5:56 a.m. on November 9, 1986, she was on duty at the hospital when she received a telephone call that a clerk at Allsup's had been injured. She proceeded immediately to the store where she found Manrrique lying face down on the floor in the back of the store. Manrrique was alive, but had a weak pulse.

Dr. Kveton began cardiopulmonary resuscitation with mouth to mouth respiration. She continued the resuscitation attempts until Manrrique was transported to the hospital. Upon arrival at the hospital, Dr. Kveton observed bullet wounds to the victim's head, chest, and back. After several attempts to revive Mr. Manrrique failed, he was pronounced dead at 7:08 a.m. Dr. Kveton testified that, in her opinion, the victim received his injuries approximately ten to fifteen minutes prior to her arrival at the scene and that his death resulted from gunshot wounds.

Richard Cordell, the Chief of Police of Hale Center, arrived at the scene just after 6:00 a.m. After securing the scene, he made a search of the premises and noticed a bullet hole in the door to the rest room located at the back of the store.

Captain Mansel Gilmer, of the Hale County Sheriff's Office, assisted in the homicide investigation. During the course of his investigation he inspected the store, took photographs and attempted to develop fingerprints from the cash registers and various other items in the store. No fingerprints were lifted. Captain Gilmer found three spent shell casings in the back storeroom. Gilmer attended the autopsy and observed the pathologist remove two bullets from the deceased's body.

Carey Todd testified that he was acquainted with the appellant and had known him to carry a .22 caliber Ruger weapon. Todd testified that appellant gave him the .22 Ruger so that he could assist appellant in killing two people. Todd received the weapon from the appellant on May 16, 1987, and turned it over to the authorities.[1]

William Albrecht, a special agent with the Federal Bureau of Investigation, testified that he was an expert in the field of firearms examination. Agent Albrecht conducted an examination of a bullet retrieved from the deceased's body and con-

---

1. At a pretrial hearing, testimony was developed that Todd was a confidential informant and had been involved in several drug transactions with the appellant. Todd informed the authorities that appellant was in possession of a .22 caliber weapon that had been used in some murders. Charles Feagley, a Swisher County Deputy Sheriff, told Todd that if he ever acquired the weapon he would like to see it. No further conversations were had with Todd concerning the weapon.

cluded that the bullet was fired from the barrel of a weapon having rifling characteristics consistent with those of the .22 Ruger appellant gave to Carey Todd. Albrecht could not reach a positive identification because the microscopic characteristics of the barrel were changing rapidly. Albrecht also examined the three spent .22 caliber shell casings that were found on the floor of the storeroom where the deceased's body was discovered. Albrecht positively identified the cartridges as having been fired by the .22 caliber Ruger.

Peter Belcastro, a fingerprint specialist with the FBI, testified that he examined the .22 Ruger and discovered two latent fingerprints under the grips of the weapon. After comparing these prints with known prints of the appellant, he concluded that the prints on the weapon were appellant's.

Dr. Ralph Erdmann, a forensic pathologist, testified that he performed an autopsy on the body of David Manrrique. Dr. Erdmann concluded that the victim had been shot twice in the back and once on the top of the head and died as a result of the multiple gunshot wounds.

Appellant told his friend, Ronnie Thompson, about how he "killed the guy working at Allsup's." Thompson testified that appellant described that he had shot the man once in the head and twice in the back. Deborah Thompson, Ronnie's wife, had also discussed the shooting with appellant. Two or three days after the shooting, appellant told Deborah that he "had gotten into debt, and needed some money, and he killed the man in the Allsup's store." Appellant described the killing by stating that he had shot the man three times. Deborah identified the .22 Ruger as belonging to the appellant.

Wayne Reed, a friend of the appellant's, saw appellant in possession of the Ruger between Thanksgiving and Christmas of 1986. Reed testified that Carey Todd told him that he had "set him (appellant) up to take the big fall."

Danny Stoker, appellant's brother, testified that he had seen the .22 Ruger in appellant's possession around Christmas of 1986. Stoker stated that appellant had fixed the trigger on the gun for Carey Todd.

Appellant contends that the evidence is insufficient because it failed to adequately show that the appellant intentionally caused the death of the victim and that the murder was committed while in the course of committing a robbery. This Court will not determine whether it believes that the evidence at trial establishes guilt beyond a reasonable doubt, but rather will determine, after reviewing the evidence in the light most favorable to the jury's verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989).

■ Traditionally, this Court has applied the outstanding reasonable hypothesis test when judging the sufficiency of the evidence in "circumstantial evidence" cases. This Court has held that the reasonable hypothesis analysis is not a separate standard of review, but is merely a different formulation of the normal standard of review set out in *Jackson*, 443 U.S. 307, 99 S.Ct. 2781. *County v. State* (Tex.Cr.App. 69,793 delivered March 29, 1989). In other words, if the evidence supports a reasonable inference other than appellant's guilt, a finding of guilt beyond a reasonable doubt is not rational. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Cr.App.1983).

■ It is not required that the circumstances should, to a moral certainty, actually exclude every hypothesis that the act may have been committed by another person, but the evidence must show that the hypothesis is a reasonable one, consistent with the circumstances and the facts proved. *Carlsen*, 654 S.W.2d at 447.

It is undisputed that David Manrrique was killed by a firearm, in the early morning hours of November 9th, 1986, while working at Allsup's store. Manrrique had care, custody and control of the store and the money in the cash register while on his shift. The evidence shows that ninety-six

dollars was missing from the cash register after the shooting. Appellant was in debt and told Deborah Thompson he killed the clerk at Allsup's because he needed money. Appellant also told Ronnie Thompson that he had committed the murder at the store. Further, appellant's description of the murder matched the injuries found on the body of the deceased.

The weapon obtained from the appellant, and seen in his possession on several occasions, was tied to the murder scene. First, spent shell casings found on the floor of the storeroom were fired from the weapon. Second, a bullet retrieved from the body of the deceased was fired from a weapon whose barrel had rifling characteristics consistent with those of the weapon appellant had in his possession. A rational trier of fact could have found that appellant committed the murder of David Manrrique during the course of committing a robbery as alleged in the indictment. Appellant's point of error number three is overruled.

■ In point of error number nine, appellant contends that the evidence is insufficient to support the jury's affirmative finding to special punishment issue number two. Article 37.071(b)(2) V.A.C.C.P.[2]

Appellant argues that there is no evidence that he planned the robbery and murder. He further contends that the State did not prove the existence of a criminal record, and the only extraneous criminal act the State proved was an unadjudicated offense of delivery of a controlled substance. Appellant states that the evidence fails to adequately demonstrate a propensity to commit violent acts sufficient to warrant an affirmative answer to special issue number two.

In determining the merit of appellant's contention, we use the same standard of review set forth in our disposition of the preceding point of error: whether the evidence, when viewed in the light most favorable to the verdict, would lead any rational trier of fact to make the finding beyond a reasonable doubt. See *Burns v. State*, 761 S.W.2d 353 (Tex.Cr.App.1988); *Keeton v.*

*State*, 724 S.W.2d 58, 61 (Tex.Cr.App.1987) and cases cited therein.

■ The jury is permitted to consider many factors when determining whether the defendant will pose a continuing threat to society. Those factors include, but are not limited to:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

2. the calculated nature of the defendant's acts;

3. the forethought and deliberateness exhibited by the crime's execution;

4. the existence of a prior criminal record, and the severity of the prior crimes;

5. the defendant's age and personal circumstances at the time of the offense;

6. whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;

7. psychiatric evidence; and

8. character evidence.

*Keeton*, supra at 61; see also cases cited therein.

■ At the penalty stage of trial, the jury may consider all of the evidence adduced at the guilt stage. *Santana v. State*, 714 S.W.2d 1, 8 (Tex.Cr.App.1986). The calculated nature of defendant's act and the forethought with which he coldly planned and executed his crime is probative of his propensity to commit future acts of violence. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979), *cert. denied* 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980). The circumstances of the offense itself, if severe enough, can be sufficient to sustain an affirmative finding to the second special issue. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Cr.App.1986), *cert. denied* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Moreno v. State*, 721 S.W.2d 295, 302 (Tex.Cr.App.1986).

---

**2.** Article 37.071(b)(2) asks the jury: "Whether there is a probability that the defendant would

commit criminal acts of violence that would constitute a continuing threat to society."

The evidence in the instant case reveals that appellant murdered David Manrrique while in the course of robbing him. Manrrique was shot twice in the back and once on the top of the head. Two or three days after the murder appellant told Deborah Thompson that he had gotten into debt, needed money and killed the man at Allsup's store. As he described the killing, Deborah noticed that appellant had a "devilish, evil-looking smile" on his face. Appellant then threatened that "if anybody opened their mouth against him, they would never make it to the witness stand." Carey Todd testified that appellant gave him the murder weapon so that he (Todd) could help him kill Deborah and Ronnie Thompson, two people who were going to testify against him. Upon giving the weapon to Todd, appellant stated that "he killed people with it."

At the punishment phase of the trial, the State introduced evidence that appellant had committed the offense of delivery of a controlled substance. Additionally, eight law enforcement officers testified that appellant had a bad reputation in the community for being a peaceful and law abiding citizen. Finally, Dr. James Grigson, a psychiatrist, testified that based upon a "hypothetical question" involving the same facts as presented in the instant case, a person such as the appellant, is violent and would most certainly present a continuing threat to society. According to Grigson, the facts of the murder indicate a cold-blooded type of killing, in which the person enjoyed the actual killing itself. This, coupled with the fact that such a person made threats to kill again soon after the murder, indicated that such an individual is "really one of the more dangerous type of people in society." On a scale from one to ten, with one being a person that is only breaking minor rules and ten being a person who commits murder with a complete disregard for another human being's life, the person described in the hypothetical would be over a ten.

Appellant's mother testified on his behalf during the punishment phase of trial that appellant was twenty eight years old and had been the "head of the household" since he was sixteen. Appellant had helped her care for his younger brothers since her husband, appellant's father, had left home.

Appellant argues that the commission of the instant offense is the only act of violence shown to be committed by appellant. The record clearly shows that appellant not only threatened to kill others if they went to the authorities, but was in the process of planning the murders of Deborah and Ronnie Thompson.

■ We note additionally, that there was no evidence presented that appellant was under the influence or domination of another person or that he was under mental or emotional pressure which might be regarded as mitigating. Both of these are factors to be considered by the jury in answering the special issues. *Russell v. State*, 598 S.W.2d 238, 254 (Tex.Cr.App.1980).

In sum, the evidence as reflected by appellant's subsequent criminal conduct, his present bad reputation for being peaceful and law abiding, the severity of the circumstances of the present offense, and the psychiatric predictions for his continued violent behavior sufficiently support the jury's affirmative finding that there is a probability that appellant would constitute a continuing threat to society. Appellant's ninth point of error is overruled.

In point of error number one, appellant contends that the trial court erred in admitting into evidence a .22 caliber shell casing found in appellant's vehicle.

During an inventory of appellant's vehicle, police officers discovered a spent .22 caliber shell casing. The shell casing was admitted into evidence and a FBI firearms examiner testified that this shell was fired from the same weapon that had fired the three spent .22 caliber shells found on the back storage room floor at the murder scene. The weapon that fired the shell found in the inventory was the same weapon that Carey Todd obtained from the appellant.

■ Appellant concedes that the inventory search of his vehicle was valid. Appellant also recognizes that any evidence of a crime seized pursuant to a lawful invento-

ry search may be admitted against the owner of a vehicle; however, such evidence must come within the "plain view" doctrine [3] before officers may lawfully *seize* the object without a warrant. Appellant's contention is that the shell casing could not be seized under the "plain view" doctrine because it was not "in and of itself, evidence of any criminal activity."

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court discussed the plain view exception to the warrant requirement and the three conditions that must be met to invoke that doctrine: (1) the initial intrusion must be proper, in other words, that the police have a right to be where they are when the discovery is made; (2) the discovery of the evidence must be inadvertent; and (3) it must be "immediately apparent" [4] to the police that they have evidence before them. *Snider v. Texas*, 681 S.W.2d 60, 63 (Tex.Cr.App.1984). As to the first prong of the *Coolidge* analysis, appellant concedes that the inventory *search* of his automobile was lawful. Therefore, the police officers had a right to be in the automobile at the time the shell casing was discovered. Second, the discovery of the shell casing was inadvertent since it was found in the course of the inventory.[5] The third prong of *Coolidge* has been explained in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), to be a probable cause requirement.[6] The only contested question is whether the police officers had sufficient probable cause to believe that the shell casing was an instrumentality of a crime.

The testimony reveals that James Rogers, an investigator for the Swisher County District Attorney's office, was present at the time the inventory was conducted. Rogers knew that the owner of the vehicle was a suspect in the murder-robbery occurring in Hale Center. Rogers was also aware that a small caliber weapon was used in the commission of this offense. These facts establish sufficient probable cause to believe that this shell casing was evidence relating to the murder at the Allsup's store.

The discovery of the shell casing was the result of a proper inventory search. Because Rogers' knowledge concerning the ongoing investigation for capital murder made it "immediately apparent" that the casing was evidence of a crime, its seizure was also proper. Appellant's first point of error is overruled.

■ In point of error number two, appellant contends that the trial court erred in admitting into evidence three .22 caliber shell casings taken from the scene of the crime. Appellant argues that the State failed to properly establish a chain of custody for this evidence.

Mansel Gilmer testified that on November 9, 1986, he found three spent .22 caliber shell casings on the floor of the Allsup's store where this offense occurred. Gilmer photographed the shell casings where they were found and then took custody of them. Gilmer testified that the three shell casings were each placed in an envelope. He then placed the envelopes in a clear plastic bag

---

**3.** It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence. *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968).

**4.** The Supreme Court has since stated of the "immediately apparent" requirement:

Decisions by this Court since *Coolidge* indicate that the use of the phrase "immediately apparent" was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the "plain view" doctrine.

*Texas v. Brown*, 460 U.S. 730, 741, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

**5.** Discovery of evidence has been held to be inadvertent when the police officers did not know in advance the location of the evidence and intend to seize it. *Coolidge*, 403 U.S. at 470, 91 S.Ct. at 2040.

**6.** "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the activity with criminal activity." *Payton v. New York*, 445 U.S. at 578, 100 S.Ct. at 1380. See also *Texas v. Brown*, 460 U.S. 730, 741, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

along with two bullets he obtained from Dr. Erdmann.[7] Gilmer marked the plastic bag with the date the evidence was found, his initials and the case number. Gilmer testified that this bag was kept in his care, custody and control and was not tampered with in any way.

On November 15, 1986, Gilmer transferred the bag and its contents to Police Chief Richard Cordell. Cordell testified that when he received the plastic bag from Gilmer he was informed as to its contents. Cordell stated that he did not open the plastic bag but placed it inside a brown paper envelope which he tagged and locked in an evidence safe at the Hale Center Police Department. The evidence remained in the evidence locker until Cordell released it to Tommy Quisenberry, an investigator with the Hale County District Attorney's Office. In Quisenberry's presence, Cordell opened the plastic bag and inventoried its contents. Quisenberry testified that the bag contained three spent .22 caliber shell casings and two bullets.[8] Testimony was later developed that the three spent shell casings were sent to the FBI for analysis. Appellant does not contest the chain of custody after the evidence left Cordell's possession.

The appellant argues that there is conflicting testimony as to whether the three spent shell casings were secured in individual envelopes, separate film canisters or one single film canister. Appellant further argues that since the officers did not place identifiable marks on the shell casings, there was no assurance that the evidence was in fact the same evidence seized from the crime scene.

■ Tagging an item of physical evidence at the time of its seizure and then identifying it at trial based upon the tag is sufficient for admission barring any showing by the defendant of tampering or alteration. See *Garcia v. State*, 537 S.W.2d 930, 934 (Tex.Cr.App.1976). The chain of custody is conclusively proven if an officer is able to identify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room, and then retrieved the item being offered on the day of trial. *Elliott v. State*, 450 S.W.2d 863, 864 (Tex.Cr.App. 1970).

The conflicting testimony as to the type of container in which the shell casings were placed while inside the plastic bag does not amount to a break in the chain of custody. The evidence is uncontroverted that the shell casings were continuously inside the sealed plastic bag. There is no allegation that the evidence inside the plastic bag had been altered or tampered with. The evidence shows that each person who had possession of the plastic bag placed their identifying mark on it and could identify it at the time of trial. The evidence shows that the bag remained sealed from the time it left Gilmer's possession until Cordell and Quisenberry opened it on November 15th. Any discrepancy in the testimony goes only to the weight of the evidence and not its admissibility. *Atkins v. State*, 515 S.W.2d 904, 906 (Tex.Cr.App.1974); *Beck v. State*, 651 S.W.2d 827, 829 (Tex.App.—Houston [1st Dist.] 1983, no pet.). Appellant's point of error number two is overruled.

■ In point of error number eight, appellant contends that the trial court erred in admitting into evidence a .22 caliber weapon that was seized pursuant to an unlawful search by Carey Todd, a private citizen, at the request of law enforcement officials. Appellant claims that this unlawful seizure violated his Fourth Amendment rights under the United States Constitution.

At the pretrial motion to suppress hearing, Carey Todd testified that he had been working in the capacity of an unpaid confidential informant for law enforcement offi-

---

7. Erdmann performed an autopsy on the body of the deceased. During the autopsy, Erdmann recovered two bullets from the body. One of the bullets was admitted into evidence. The chain of custody on this bullet is not disputed.

8. Quisenberry testified that the shell casings were contained in a black film canister. Cordell stated that the plastic bag contained three film canisters. He later testified that he did not remember the number or types of containers in the plastic bag.

cials in Swisher County. As a confidential informant, Todd was arranging drug transactions involving the appellant. In early April, 1987, Todd told Charles Feagley, a Swisher County Deputy Sheriff, that appellant had a .22 caliber weapon that had been used in an armed robbery in Hale Center and had been used in some murders. Deputy Feagley told Todd that if he (Todd) ever obtained the weapon he would like to see it. Feagley had no further communications with Todd concerning the weapon. On May 16, 1987, appellant gave Todd the weapon so that Todd could assist him in murdering two people. After obtaining the weapon, Todd turned it over to Swisher County law enforcement officials. Todd testified that he was never instructed by law enforcement officials on how to obtain the weapon, but rather took it upon himself to get the gun. Todd further testified that he was not compensated for retrieving the weapon.

We initially note that a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and "such private wrongdoing does not deprive the government of the right to use evidence." *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). Therefore, the question which must be addressed is whether Carey Todd was acting as an "instrument" or agent of the State when he obtained the weapon from appellant. See *Coolidge v. New Hampshire*, 403 U.S. at 487, 91 S.Ct. at 2048.

In *United States v. Bazan*, 807 F.2d 1200, 1203 (5th Cir.), *cert. denied* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987), the Fifth Circuit Court of Appeals adopted two factors to be considered in determining whether a person is acting as an "instrument" or agent of the State. The two factors are: (1) whether the government knew of, and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *Bazan*, 807 F.2d at 1203. See also *United States v. Miller*, 688 F.2d 652 (9th Cir.1982).

Todd's testimony reveals that he initiated the conversation with Deputy Feagley concerning appellant's possession of a weapon that had been used in criminal conduct. Upon learning this information, Feagley told Todd, "if you ever acquire it, I would like to see it." The record indicates that the government did not instruct Todd on how to obtain the weapon, or even that he should obtain it. Since law enforcement officials did not direct Todd to obtain the weapon, nor had reason to know that he would enter appellant's home to acquire the weapon we cannot conclude that the State "knew of or acquiesced in the intrusive conduct." *Bazan*, 807 F.2d at 1203. Additionally, Feagley's statement was too vague and general to infer government knowledge of Todd's conduct in obtaining the weapon. Compare *Walters v. State*, 680 S.W.2d 60, 62 (Tex.App.—Amarillo 1984).

Todd's status as a police informant does not, by itself, convert private action into state action for purposes of the Fourth Amendment. *United States v. Bomengo*, 580 F.2d 173, 175 (5th Cir.1978). This is especially true in the instant case where Todd's activities as a confidential informant were limited to drug transactions and did not include furnishing information on the murder in Hale Center.

In *Miller*, 688 F.2d at 657, the Circuit Court found that entry of the victim of a theft onto the defendant's property to search for his stolen trailer was a private search. The court reasoned that the victim acted to further his own ends. The court noted that there was "nothing in the record to suggest that the officers encouraged the victim to act on their own behalf, or even planted the idea of conducting a private search." *Miller*, 688 F.2d at 657.

The record in the instant case reveals that there was less police involvement than in *Miller*, which the court found to be private search. In the *Miller* case, the police knew in detail what the informant proposed to do and when he would do it. In the instant case, Todd's involvement with local law enforcement officials concerned drug trafficking in the area. Todd

approached the police with information that appellant was in possession of a weapon used in a robbery-murder. It was only then that Deputy Feagley expressed an interest in the weapon. Deputy Feagley had no knowledge of what Todd would do or when he would act.

From the foregoing facts we must conclude that since the government offered no form of compensation to Todd, did not initiate the idea that he should obtain the weapon and lacked specific knowledge that the informant intended a search, Todd did not act as a government agent when he entered appellant's property and took possession of the gun. Since seizure of the weapon was conducted by a private party, it is irrelevant whether Todd's seizure of the weapon was otherwise proper. Point of error number eight is overruled.

In point of error number five, appellant contends that the trial court erred in failing to grant a mistrial when the State introduced evidence of extraneous offenses during the guilt-innocence phase of the trial. Appellant set out four separate instances when evidence of extraneous offenses were presented in front of the jury. We will address each one of appellant's contentions separately.

■ Appellant's first contention is that reversible error occurred when Carey Todd testified that he was paid three hundred dollars by the State for moving expenses. Todd further testified that he moved for his own protection. Appellant objected to this testimony and the objection was sustained. Appellant then moved for a mistrial which was denied.

Appellant argues that this testimony introduced evidence of an extraneous offense in that "the implication and innuendo associated thereby indicates and establishes fear on the part of the authorities and the witness Todd of retaliation by the Appellant if the Appellant learned of or discovered the true facts."

It is well established that when a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, the defendant is not in position to complain on appeal. *Womble v. State,* 618 S.W.2d 59 (Tex.Cr.App.1981). This is more commonly known as the doctrine of curative admissibility. *Maynard v. State,* 685 S.W.2d 60 (Tex.Cr.App.1985).

In the instant case, evidence was introduced, without objection, that a false arrest report had been filed against Todd for the offense of unlawfully carrying a weapon. This report was created, for Todd's protection, after he obtained the murder weapon from the appellant. Additionally, Charles Feagley testified, without objection, that Todd was given money as part of the witness relocation program. The record further shows the unobjected to testimony of Deborah Thompson established that appellant told her "if anyone opened their mouth against him, they would never make it to the witness stand."

We find that the same type of evidence appellant objected to, that being Carey Todd's apprehension of retaliation by the appellant, was introduced without objection. Any potential error was therefore waived under the doctrine of curative admissibility.

■ Appellant further contends that the trial court erred in failing to grant a mistrial after sustaining an objection to the testimony of Deborah Thompson that appellant was in debt because he "fronted too many drugs."

Deborah Thompson testified at the guilt-innocence phase of the trial that appellant made a statement to her that he had gotten into debt, needed some money and killed the man at Allsup's store in Hale Center, Texas. Appellant told her the reason he was in debt was because he had "fronted too many drugs." Appellant's trial counsel objected to this testimony and the trial court sustained the objection. The jury was instructed to disregard the testimony but the trial judge denied appellant's motion for a mistrial.

It is well-established that an accused may not be tried for some collateral crime or for being a criminal generally. *Russell v. State,* 598 S.W.2d 238, 250 (Tex.Cr.App. 1980). However, there are situations in

which extraneous criminal offenses committed by the accused are admissible. *Russell*, 598 S.W.2d at 250. In *Brooks v. State*, 580 S.W.2d 825 (Tex.Cr.App.1979) we stated that:

> [t]he general rule against admitting evidence of other crimes by the accused is inapplicable if such evidence logically tends to show his guilt of the offense charged. In other words, relevant evidence that tends to prove that the accused committed the crime charged is not inadmissible simply because it may also reveal that he has committed other crimes.

See also *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

One of the exceptions to the general rule that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime, is that evidence which would show a motive is admissible even though it would also show the commission of a collateral or extraneous offense. *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex.Cr.App.1972). The prosecution may always offer evidence, if it is known to exist, to show motive for the commission of an offense because it is relevant as a circumstance tending to prove the commission of the offense. *Rodriguez*, 486 S.W.2d at 358.

Rule 404(b) Tex.R.Crim.Evid. allows evidence of other crimes, wrongs or acts to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Evidence that appellant was in debt is probative of appellant's state of mind at the time of the robbery of the grocery store. The surrounding circumstances of appellant's indebtedness, e.g. the "fronting of too many drugs," is also admissible as the motivation behind the robbery. See *Cherry v. State*, 488 S.W.2d 744, 751 (Tex. Cr.App.1972) (court allowed detailed explanation of motive for killing by evidence of escape from penitentiary and length of confinement). Therefore, it was not error for the trial court to deny appellant's motion for a mistrial.

Appellant also contends that the trial court erred in failing to grant his motion for a mistrial after a defense witness stated during cross-examination that appellant had been arrested on a drug charge.

Gayle Kiser testified on direct examination that she was present when Carey Todd came to appellant's home and obtained the murder weapon from the appellant. Kiser testified that she was not sure of the exact date when this transaction occurred. During cross-examination the State questioned Kiser as to why she had never come forward with this information. Kiser responded that she did not know anything about the gun until the appellant was arrested. Upon further questioning as to when she realized the significance of the weapon, the following exchange occurred:

Q. (by the prosecutor) And when was that?

A. The following Monday, I guess.

Q. How long ago was that?

A. I don't know. It was in May.

Q. May, and this is October.

A. Well, they picked David up for a drug charge, not—

Appellant's counsel objected to this testimony. The trial court instructed the jury to disregard the witness' answer but denied appellant's motion for a mistrial.

Not every improper response requires reversal. Except in extreme cases, if a timely objection to the remark is sustained and the trial court instructs the jury to disregard the error is cured. *Barney v. State*, 698 S.W.2d 114 (Tex.Cr.App.1985). The record is replete with instances of appellant's drug use. The testimony of this witness, even if considered, would have had minimal, if any, impact on the jury in reaching its verdict. We find that the trial court's instruction to disregard the answer of the witness cured any error and the appellant was not entitled to a mistrial. In light of the above, appellant's point of error number five is overruled.

In point of error number six appellant contends that the cumulative effect of the prosecutor bringing before the jury extraneous matters amounted to prosecutorial

misconduct and thereby denied appellant a fair trial. Appellant sets forth the four instances of extraneous offenses complained of in point of error number five as repeated attempts by the prosecutor to present extraneous offenses to the jury. We will examine each of the four instances to determine (1) if prosecutorial misconduct occurred and (2) whether the cumulative effect of such misconduct constitutes reversible error.

In *Landry v. State,* 706 S.W.2d 105 (Tex.Cr.App.1985), *cert. denied* 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986), this Court listed three factors which may be considered in determining whether prosecutorial misconduct resulted in reversible error. The three factors to be considered are: (1) whether the defendant objected to the conduct of the prosecutor, (2) whether the prosecutor deliberately violated a court order, and (3) whether the prosecutorial misconduct was so blatant as to border on being contumacious. Although this list is neither exhaustive nor mandatory, it does provide a starting point for identifying reversible conduct. *Stahl v. State,* 749 S.W.2d 826, 831 (Tex.Cr.App. 1988).

In the first instance, the appellant complains that eliciting testimony from Carey Todd that he moved for his own protection constituted prosecutorial misconduct. We find that the misconduct, if any, was cured when the same evidence was later admitted without objection.

As to the testimony that appellant was in debt because he "fronted too many drugs," we held in our disposition of point of error number five that such evidence was admissible to show the surrounding circumstances of appellant's motive for the robbery. Therefore, no prosecutorial misconduct occurred by such questioning.

As to the testimony that appellant was arrested on extraneous drug charges, we found in point of error number five, that this testimony was an unresponsive answer to a legitimate question by the prosecutor. It is difficult to find the prosecutor's actions constituted misconduct; especially, in view of the fact that the prosecutor did not expound on the witness' answer, but rather moved into another line of questioning.

In the instance concerning Todd's testimony that appellant told him that the gun had been used to kill people, we find that the trial judge overruled appellant's objection concerning that extraneous offense. Because the prosecutor's question was not in violation of a ruling or order from the trial judge, there was no misconduct. *Stahl,* 749 S.W.2d at 831. Appellant's sixth point of error is overruled.

In point of error number eleven appellant contends that the trial court erred in allowing two witnesses for the State to testify when he had no notice of such testimony. Appellant filed a pretrial motion requesting that the State be required to provide appellant with the names of all the witnesses the State intended to call during the guilt-innocence and punishment phases of trial. The trial court granted appellant's motion. During the guilt-innocence phase of trial the State call Ronald Dean Hale to testify. Appellant filed a motion for continuance claiming surprise and that he was unable to adequately prepare for cross-examination. The trial court overruled the motion for continuance but allowed appellant the opportunity to question the witness before he was called to testify. The prosecutor was also instructed to furnish appellant's counsel, prior to cross-examination, with a computer printout of the witness' criminal record.

Ronald Hale testified that he knew appellant as well as Carey Todd and Deborah Thompson. He stated that he had seen appellant with a gun similar to the murder weapon sometime in the winter of 1986–1987.

During the punishment phase of trial, appellant's counsel stated to the trial court that he anticipated that the State would call Roy Lee Murphy, a field crime supervisor with the Department of Public Safety. Counsel for appellant then objected to Mr. Murphy's testimony on the ground that he was not named in the State's list of wit-

nesses. The trial court overruled appellant's objection but told appellant's counsel that he could talk to the witness before he testified. Murphy testified, during the punishment phase, that a substance he received from the Swisher County District Attorney's Office was methamphetamine.[9]

■ This Court held in *Young v. State*, that upon request by the defense, notice of the State's witnesses should be given. *Young v. State*, 547 S.W.2d 23, 27 (Tex.Cr. App.1977). If a witness whose name is not on a witness list furnished the defendant is permitted to testify, the standard of review is whether the trial court abused its discretion in allowing such witness to testify. *Bridge v. State*, 726 S.W.2d 558, 566 (Tex. Cr.App.1986). Among the factors which will be considered by this Court in determining whether there has been an abuse of discretion is a showing of bad faith on the part of the prosecutor in failing to disclose ahead of time the name of the witness. Another such factor is whether the defendant can reasonably anticipate that the witness would testify, although his or her name was not included within the witness list. *Hightower v. State*, 629 S.W.2d 920, 925 (Tex.Cr.App.1981).

In the instant case, appellant admits that the State did not act in bad faith by failing to put Hale's name on their witness list. The State represented to the trial court and appellant's counsel that Hale was a surprise witness for them as well.

The facts in the present case are similar to those in *Bridge*. The defendant in *Bridge* was convicted of capital murder and sentenced to death. During the guilt-innocence phase of the trial the State learned the identity of a surprise witness to whom the defendant had made damaging admissions. Upon the State calling this witness, the defendant objected on the grounds that the witness was not on the original witness list and he (the defendant) was surprised and unable to adequately prepare a cross-examination and rebuttal. There was no claim of bad faith on the part of the prosecutor. The trial court ordered a recess so that the defendant's counsel could have an opportunity to talk to the witness before she testified. This Court found no abuse of discretion in allowing the witness to testify.

In the instant case, both the State and appellant were "surprised" upon learning the identity of Hale. The State did not demonstrate any bad faith in failing to include Hale's name on their witness list. Although the ability of appellant to reasonably anticipate that the witness would testify is merely a factor to be considered, it is not, by itself, determinative of whether the trial court abused its discretion. In the present case, we note that the trial court allowed appellant's counsel an opportunity to talk with Hale prior to his testifying and additionally ordered the district attorney to produce a computer print-out of the witness' prior criminal history. Appellant had an overnight recess in which to investigate the witness and prepare his cross-examination. In light of these actions we hold that the trial court did not abuse its discretion in allowing Hale to testify.

■ As to Murphy's testimony, the record reveals that appellant's trial counsel was aware of the fact that an extraneous offense of delivery of methamphetamine existed and could be admitted during the punishment phase of the trial. Additionally, appellant's trial counsel stated "I anticipate the State of Texas is going to call witnesses in regard to a drug transaction. In that connection, I anticipate the State will call Mr. Roy Murphy, a chemist with the Texas Department of Public Safety." There is no showing of bad faith on behalf of the State in failing to include Murphy's name on their witness list. Counsel for the State stated that at the start of the trial he was uncertain whether he would call Murphy as a witness. Additionally, the appellant could have reasonably anticipated that the State would call a chemist to prove up the extraneous offense of delivery of methamphetamine. Further, the trial court

---

9. During the punishment phase of trial, the State offered evidence of an extraneous drug transaction involving the appellant. The substance seized as a result of the drug transaction was that tested by Murphy.

gave appellant's counsel an opportunity to talk with the witness before he testified. The trial court did not abuse its discretion in allowing the State to call Roy Murphy as a witness. Appellant's point of error number eleven is overruled.[10]

In point of error number seven appellant contends that the trial court erred in failing to appoint an expert witness who would testify, at the punishment stage of the trial, regarding the effect that the parole system of Texas had upon a defendant's sentence.

During the punishment phase of the trial, appellant requested that the trial court appoint an expert on the Texas parole system. Counsel for appellant stated that he had located such an expert who was available to testify. The trial court denied appellant's request stating that matters such as parole are not an issue to be brought before a jury in determining punishment and therefore there was no need for appointment of the expert.

Appellant argues that the failure to appoint an expert qualified to testify on the issue of parole, denied him a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Appellant claims that in order to answer special issue number two, as set forth in Article 37.071, V.A.C.C.P., the jury should have been apprised as to the effect of parole on a life sentence for one convicted of capital murder.

It has long been held that the matter of parole or a defendant's release thereon is not a proper consideration for a jury's deliberations in the punishment phase of a capital murder trial.[11] *O'Bryan v. State*, 591 S.W.2d 464, 478 (Tex.Cr.App.1979);

*White v. State*, 629 S.W.2d 701, 708 (Tex. Cr.App.1981). The jury's task at the punishment phase of a capital murder trial is to answer the special issues as required by Art. 37.071, V.A.C.C.P. *O'Bryan*, 591 S.W.2d at 478. Further, it has consistently been held that it is not error for a trial court to refuse appellant's requested instruction to the jury explaining the parole laws of this state. *O'Bryan v. Estelle*, 714 F.2d 365 (5th Cir.1983), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *O'Bryan*, 591 S.W.2d at 478; *Andrade v. State*, 700 S.W.2d 585, 587 (Tex. Cr.App.1985), *cert. denied* 475 U.S. 1112, 106 S.Ct. 1524, 89 L.Ed.2d 921 (1986).

The effect of appellant's request for expert testimony was to place the issue of parole before the jury.[12] Since this was an impermissible area of inquiry for the jury, we hold that no error was committed by failing to appoint an expert witness to testify as to the effect of the Texas parole laws. There being no error, point of error number seven is overruled.

In point of error number ten appellant contends that the trial court erred in failing to appoint an expert witness trained in psychiatry or psychology. After the conclusion of the voir dire examination, appellant filed a motion with the District Clerk for a continuance and appointment of an expert. The motion was presented to the trial court approximately a week later, at the conclusion of the testimony of the State's expert, Dr. James Grigson. The trial court denied appellant's motion.

The appointment of an expert witness under Art. 26.05, V.A.C.C.P., rests within the sound discretion of the trial court. *Quin v. State*, 608 S.W.2d 937, 938 (Tex.Cr.

---

**10.** We note that appellant did not make an objection when either witness was called to testify. Appellant's complaint is not properly preserved for review. However, in the interest of justice and due to the severity of the attending punishment we addressed appellant's claim. *Clay v. State*, 505 S.W.2d 882, 885 (Tex.Cr.App.1974).

**11.** At the time of this trial Article 37.07 § 4(a), V.A.C.C.P. had been amended to require the trial court to submit certain instructions regarding good conduct time and parole eligibility to the jury at the punishment phase of noncapital

felony trials. We held in *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987), that such instructions violate the separation of powers doctrine in the Tex. Const. Art. II, § 1, and the due process clauses of Tex. Const. Art. I, §§ 13, 19. We note that this provision was inapplicable to capital murder trials. See Art. 37.071, V.A.C. C.P.

**12.** There is no evidence in the record that this expert would testify to anything other than the Texas parole laws.

App.1980); *Barney v. State*, 698 S.W.2d 114, 126 (Tex.Cr.App.1985). Absent a showing of harm, no abuse of discretion in the refusal to appoint an expert will be found. *Quin*, 608 S.W.2d at 938.

Appellant contends that the trial court abused its discretion in refusing to appoint an expert under the guidelines set out in *Hammett v. State*, 578 S.W.2d 699, 707 (Tex.Cr.App.1979). After reviewing the facts in the present case in light of the guidelines set out in *Hammett*, we are unable to find that the trial court abused its discretion in refusing to appoint an expert witness. Appellant made no pretrial request for appointment of such an expert. During pretrial proceedings counsel for appellant advised the trial court that he did not want to have his client examined and that he did not wish to present psychiatric or psychological testimony. When trial counsel filed his motion for continuance and appointment of an expert, he did not present any testimony or affidavits in support of his motion. Further, the record is unclear as to whether counsel for appellant had contacted the psychologists named in the motion to ascertain their availability to testify. Counsel for the appellant failed to present evidence as to the costs involved in procuring the services of a psychologist.

In responding to the trial court's questions as to reasons for the delay in presenting the motion, appellant's counsel responded that defense strategy had changed during the course of trial due to new evidence being submitted by the prosecution. Specifically, he had not anticipated the introduction of extraneous drug offenses committed by appellant. Appellant's counsel was aware of the existence of these extraneous offenses since they were pending by indictment in the same court as the instant case. Appellant has failed to demonstrate harm in the trial court's refusal to appoint an expert witness. As we stated in *Hammett*, "[n]ot only was the late hour in which appellant filed his motion calculated to be disruptive of the trial, the very nature of his motion compounded the problem. To have granted appellant's motion as it was presented and at the time it was filed would have constituted a real threat to the court's control of the trial. The granting

of appellant's motion under the circumstances here presented would have allowed appellant to manipulate his asserted rights in such a manner as to obstruct the orderly administration of justice." *Hammett*, 578 S.W.2d at 707. Appellant's point of error number ten is overruled.

■ In point of error number four appellant contends that the trial court committed reversible error in failing to grant a mistrial after the State commented on appellant's right to remain silent during the questioning of Dr. Grigson. During re-direct examination of Dr. Grigson by the State the following occurred:

Q. Dr. Grigson, had the defense attorneys allowed you to examine Mr. Stoker?
Mr. Felty: Your Honor, we're going to object as to improper question. Whether or not the Defense attorneys have or have not allowed Mr. Grigson to—to—
THE COURT: I'll sustain that objection.
Mr. Felty: We ask that the jury be instructed to disregard.
THE COURT: Ladies and gentlemen, you will disregard the last question.
Mr. Felty: Move for mistrial, Your Honor.
THE COURT: I'll overrule.

■ Art. 38.08, V.A.C.C.P., prohibits comment on an accused's right to remain silent and his failure to testify. *Jones v. State*, 693 S.W.2d 406, 407 (Tex.Cr.App. 1985). Both the state and federal constitutions have established this right. See U.S. Const., Amend. V, Tex. Const. Art. I, Sec. 10. However, it is well-settled that before a question is held to be a comment on a defendant's invocation of his constitutional rights it must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on such an invocation. *Allen v. State*, 693 S.W.2d 380, 385 (Tex.Cr. App.1984). A mere implication or indirect allusion to a defendant's failure to testify will not result in reversible error. *Pollard v. State*, 552 S.W.2d 475 (Tex.Cr.App.1977).

In order for the prosecutor's question to violate appellant's rights, the language used must be looked at from the standpoint of the jury. The implication that the prosecutor's question referred to appellant's

right to remain silent must be clear. It is not sufficient that the language *might* be construed as an implied or indirect allusion thereto. *Jones,* 693 S.W.2d at 407.

 In the instant case, during the cross-examination of Dr. Grigson, appellant's counsel asked on several occasions whether he (Grigson) had examined the appellant. Testimony was elicited that the psychiatrist had not interviewed or examined the appellant, but that Grigson's prediction that appellant would be a continuing threat to society was based solely on the facts set out in the State's hypothetical question. Therefore, the question asked by the State on redirect was intended to explain the reason why such an examination was not conducted. We do not find that the question was manifestly intended, or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's invocation of his constitutional rights. Point of error number four is overruled.[13]

 In point of error number twelve appellant states he was "denied a fair and impartial trial as guaranteed by the United States Constitution and the State of Texas Constitution by the cumulative effects of the errors committed during the trial." In light of the disposition of the foregoing points of error we overrule point of error number twelve.

Additionally, we note this is not a proper point of error and presents nothing for review. *Davis v. State,* 513 S.W.2d 928, 931 (Tex.Cr.App.1974); *Hollis v. State,* 509 S.W.2d 372, 375 (Tex.Cr.App.1974).[14]

The judgment of the trial court is affirmed.

CLINTON and TEAGUE, JJ., concur in result.

---

13. Additionally, we note that this case also falls under the rationale of *Allen,* 693 S.W.2d at 386, in that the complained of question was invited by appellant's questions to Dr. Grigson during cross-examination and was intended to explain why Grigson never examined the appellant.

14. In this point of error, appellant claims cumulative error violated his rights under the United States and Texas Constitutions. Appellant's argument is multifarious. *McCambridge v. State,* 712 S.W.2d 499, 501 n. 9 (Tex.Cr.App.1986).