

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-08-032-CR**

MITESH PATEL                                                          APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Mitesh Patel appeals his conviction for driving while intoxicated. In four points, he argues that the trial court erred by[2] (1) admitting blood samples without a proper chain of custody to show that the blood was the same as that drawn from Patel and that it had not been altered, (2) admitting

------------

[1] *See* Tex. R. App. P. 47.4.

[2] In setting forth Patel's points, we mirror the language he uses in his brief.

hospital blood test results when they did not meet the required showing for business records, (3) admitting the paramedics' records when they were not proved separate from the hospital records, and (4) denying Patel his right to cross-examination regarding the blood test results that were admitted as part of the hospital records. We will affirm.

## II. FACTUAL BACKGROUND

On May 29, 2006, Patel drove two of his friends to the Winstar Casino in Oklahoma. They took a twelve-pack of beer with them on the trip, and each person drank a beer in the car before they went inside the casino to gamble.[3] After gambling for a while, they left the casino to go back to the car to drink another beer and then went back to the casino continue gambling. After one of Patel's friends received a call that he needed to return to Fort Worth, the group left.

On the drive back, a car cut in front of Patel, causing Patel to swerve and hit a cement barricade. Patel suffered considerable injuries. Police arrested Patel for DWI, and MedStar transported him to John PeterSmith Hospital. Patel consented to a blood draw, and a nurse drew his blood. The lab results

---

[3] Patel and one of his friends had just turned eighteen that year, so they were not old enough to purchase alcohol at the casino.

revealed that the alcohol concentration in Patel's blood was .08 grams of ethyl alcohol per hundred milliliters of blood.

After hearing the above evidence, the jury found Patel guilty of DWI. The trial court sentenced Patel to 120 days' confinement, suspended the sentence, placed him on two years' community supervision, and assessed a $550 fine. This appeal followed.

### III. BLOOD SAMPLES WERE PROPERLY ADMITTED

In his first point, Patel argues that the trial court erred by "admitting the blood samples without a proper chain of custody to show that the blood was the same drawn from [him] without alteration or deletion." Specifically, Patel argues that the trial court abused its discretion by admitting the results of a blood test into evidence because there was an unexplained alteration of the blood test specimen.

The standard of review for a trial court's decision to admit or exclude evidence is an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). The test for abuse of discretion is whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate abuse. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). The appellate court

3

will not reverse a trial court's ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement. *Id*. at 391 (op. on reh'g).

In order for the results of a blood test to be admitted into evidence, a proper chain of custody of the blood sample that was drawn from the accused and later tested must be established. *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.) (proper chain of custody must be established to admit the results of scientific testing). Proof that validates the beginning and the end of the chain of custody will support the admission of evidence, barring any evidence of tampering or alteration. *Stoker v. State,* 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *disapproved on other grounds by Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998), *and cert. denied,* 498 U.S. 951 (1990); *Hall v. State,* 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), *pet. dism'd, improvidently granted*, 46 S.W.3d 264 (Tex. Crim. App. 2001). Without evidence of tampering or commingling, gaps or theoretical breaches in the chain of custody go to the weight of the evidence, not its admissibility. *Lagrone v. State,* 942 S.W.2d 602, 617 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997); *Silva v. State*, 989 S.W.2d 64, 68 (Tex. App.—San Antonio 1998, pet. ref'd). Additionally, a mere showing of the opportunity for tampering or commingling, absent affirmative evidence

4

of such, is not sufficient to require exclusion of the evidence. *Darrow v. State,* 504 S.W.2d 416, 417 (Tex. Crim. App. 1974); *Dossett v. State,* 216 S.W.3d 7, 18 (Tex. App.—San Antonio 2006, pet. ref'd).

Patel concedes in his brief that "[t]he chain [of custody] has been established from beginning to end." Consequently, we will focus our analysis solely on his contention that "there is clear evidence of an alteration of the specimen and evidence of possible tampering." During the trial, Nurse Sherry Stephens testified that she drew three vials of blood from Patel on May 29, 2006, and that she filled up each vial "half way." She identified her signature on the vials of blood that she had drawn from Patel. One of the vials, State's Exhibit 6, did not have as much blood in it as the other two (State's Exhibits 7 and 8), but Nurse Stephens said that must have been all the blood that she put in it. She said that the vial did not appear to have been tampered with in any way. On cross-examination, Nurse Stephens admitted that she could not tell if the vial had been tampered with. Later, Elizabeth Van-Munchrath, a senior forensic scientist with the City of Fort Worth Police Department Crime Lab, testified that she analyzed blood from only one of the three vials and that she did not analyze blood from State's Exhibit 6. She said that State's Exhibit 6 was half full when she received it and that she did not know what had happened to cause the vial to be less than half full. She later offered the

5

explanation that the nurse may not have filled up that vial. She testified that blood had not leaked out of the vial into the envelope containing the three vials.

No affirmative evidence exists that State's Exhibit 6—the vial that contained less blood—was altered or tampered with. At most, Patel showed a mere possibility of tampering or alteration, which is insufficient to require exclusion of the evidence. *See Stoker*, 788 S.W.2d at 10; *Dossett*, 216 S.W.3d at 21. Because the State substantiated the beginning and the end of the chain of custody for the vials and because no affirmative evidence was offered to substantiate a claim for tampering or alteration of the vial in State's Exhibit 6, we hold that the trial court did not abuse its discretion by admitting it. *See Williams v. State*, No. 02-06-00416-CR, 2008 WL 1867979, at *10–11 (Tex. App.—Fort Worth Apr. 24, 2008, pet. ref'd) (not designated for publication) (holding that trial court did not abuse its discretion by admitting swabs because chain of custody was established and no affirmative evidence was offered to substantiate claim for tampering or commingling when six swabs were admitted even though appellant claimed only four were taken); *see also Dossett*, 216 S.W.3d at 21 (holding that while there was speculation, there was no affirmative evidence that DNA test results from a moldy sexual assault kit had been commingled, contaminated, altered, or tampered with).

6

Moreover, as pointed out by the State, even if State's Exhibit 6 was erroneously admitted into evidence, it did not harm Patel because the blood in State's Exhibit 6 was not tested.[4] Patel's blood alcohol level was established by testing the blood from a different vial. Thus, even if tampering of evidence existed as to the less than half-full, untested vial of blood, that evidence is not affirmative evidence that the vial actually tested had been tampered with. We overrule Patel's first point.

## IV. HOSPITAL RECORDS MET BUSINESS RECORDS EXCEPTION

In his second point, Patel argues that the trial court erred by admitting his hospital blood test results because the hospital records did not meet the required showing for business records. Specifically, Patel contends that the hospital records did not meet the trustworthiness requirement of Texas Rule of Evidence 803(6).

Texas Rule of Evidence 803(6) provides that records kept in the course of a regularly conducted business activity are not excluded by the hearsay rule even though the declarant is available as a witness. Tex. R. Evid. 803(6). A document is properly admitted into evidence under this rule if it is established

---

[4] It is unclear from the appellate record whether Van-Munchrath tested the blood in the vial marked as State's Exhibit 7 or State's Exhibit 8; but she affirmatively testified that she did not test the blood in the vial marked as State's Exhibit 6.

the document was (1) made at or near the time of the events they record, by or from information transmitted by a person with knowledge of the events, and (2) made and kept in the course of a regularly conducted business activity. *Id.* The necessary predicate for introduction of a business record may be shown by offering either (1) the testimony of a records custodian or other qualified witness, or (2) an affidavit that complies with rule 902(10). *Id.*; *see also* Tex. R. Evid. 902(10).

The proper admission of the results of a blood test, although proven up as a business record, also requires the proponent to establish a chain of custody of the blood sample drawn and later tested. *Moone v. State*, 728 S.W.2d 928, 930 (Tex. App.—Houston [14th Dist.] 1987, no pet.). In other words, the evidence must establish that the blood tested was the blood taken from the person intended. This can be done, as set forth above, by proving the beginning and the end of the chain of custody. *Stoker*, 788 S.W.2d at 10.

Patel concedes in his brief that the State established the chain of custody from beginning to end. He argues in his second point that his blood test results were nonetheless inadmissible as a hospital business record because, according to Patel, no witness testified who drew his blood for the hospital's blood test. To support this argument, Patel relies on *Blaylock v. State*, in which the trial court did not allow the State to admit a blood test into evidence because no

8

witness knew who took the blood sample and no one established that the test results were made or recorded by a person with knowledge. No. 12-01-00295-CR, 2003 WL 60533, at *3 (Tex. App.—Tyler Jan. 8, 2003, pet. ref'd) (mem. op. denying reh'g).

However, the present facts are not like the *Blaylock* facts. As discussed above, Nurse Stephens testified at trial that she was the person who drew Patel's blood. Although most of her testimony focused on the blood draw that she did for the police, at the conclusion of her testimony, she was asked at what time she had drawn Patel's blood; she responded by asking, "The blood draw we did for us [JPS] or the officer?" When the prosecutor specified that she wanted to know the time of the blood draw taken for the officer, Nurse Stephens looked at State's Exhibit 2 and answered, "It was at ten after 12:00." State's Exhibit 2 contains Patel's hospital records, including a "Dept. of Emergency Medicine Trauma Flow Sheet," which was completed and signed by Nurse Stephens. It documents a blood draw at 2300 hours[5] and a blood draw at 0010 hours for the police. This four-page document appears to constitute Nurse Stephens's summary of all the procedures that she performed on Patel,

---

[5] The hospital lab results reflect that their specimen was collected at 2333 hours.

9

including drawing blood for both the police and the hospital. Thus, the record indicates that Nurse Stephens drew Patel's blood.

Moreover, the record contains the State's "Notice Of Intent To Offer Business Records" and an affidavit from the custodian of records at JPS Health Network. The affidavit is in substantially the same format as that listed in Texas Rule of Evidence 902(10)(b), and the affiant avers that the documents were kept in the regular course of business and that it was the regular course of business for its employee or representative, with knowledge of the act, event, condition, or opinion recorded to make the record or to transmit such information. Tex. R. Evid. 902(10)(b).

Consequently, the requirements for the business records exception to the hearsay rule were met, and the chain of custody was established. Thus, the trial court did not abuse its discretion by admitting the hospital's blood test results, which were contained in the hospital records that met the business records exception to the hearsay rule. *Durrett*, 36 S.W.3d at 211 (holding that trial court did not abuse its discretion by admitting appellant's medical records, which included results from a blood specimen showing the alcohol content in his blood, because chain of custody was proven from beginning to end). We overrule Patel's second point.

### V. MEDSTAR RECORDS WERE NOT ADMITTED

In his third point, Patel argues that the trial court erred by admitting records from the MedStar paramedics. Specifically, Patel argues that the paramedics' records were not proved up separately from the hospital records.

At trial, the following occurred outside the presence of the jury:

> [DEFENSE COUNSEL]: And, Your Honor, also today when we came in, the State had given us a PSR Texas MedStar records, and from what I saw in the file, there is not a business record affidavit regarding these records, and even if there is, it contains rank hearsay, denial of confrontation, and we'd ask -- and I don't think the State was going to go into that, the records.
>
> [ASSISTANT DISTRICT ATTORNEY]: Judge, I wasn't going to go into the records. We do have the paramedic here, so the confrontation, that's not going to be an issue. The person who wrote that report is here, but I don't intend on introducing those records.
>
> THE COURT: You're not putting the records in?
>
> [ASSISTANT DISTRICT ATTORNEY]: No.
>
> THE COURT: Okay. I assume that those are notes probably that the paramedic is going to be testifying from. Is that what you're saying.
>
> [ASSISTANT DISTRICT ATTORNEY]: That's correct.
>
> THE COURT: And you're just giving those to him in advance pursuant to time of cross-examination?
>
> [ASSISTANT DISTRICT ATTORNEY]: Correct.

11

State's Exhibit 2 contains hospital records, but Patel does not point us to any place within those records showing that the records from MedStar were also admitted. Our review of the hospital records does not reveal the inclusion of any MedStar records.[6] Because the record does not reflect that the MedStar records were admitted, we overrule Patel's third point.

## VI. CONFRONTATION RIGHT WAS NOT VIOLATED

In his fourth point, Patel argues that he was denied his right to cross-examination regarding the blood test results that were admitted as part of the hospital records. Under *Crawford v. Washington*, however, business records are nontestimonial hearsay. 541 U.S. 36, 42, 56, 124 S. Ct. 1354, 1359, 1367 (2004). Because the hospital records here were properly admitted under the business records exception to the hearsay rule, their admission did not violate Patel's confrontation rights. *See Sullivan v. State*, 248 S.W.3d 746, 750 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that substance abuse counselor's notes on appellant's history of drinking, which were contained in medical records, were not testimonial, and their admission into evidence did not violate the Confrontation Clause); *Felix v. State*, No. 05-04-

---

[6] Moreover, to the extent Patel argues that information from MedStar's records was incorporated into the hospital records, Patel has not identified any specific information from the MedStar records that was included in the hospital records.

01322-CR, 2005 WL 3163677, at *5 (Tex. App.—Dallas Nov. 29, 2005, no pet.) (not designated for publication) (holding that results of blood alcohol test are not testimonial); *Eslora v. State*, No. 04-04-00112-CR, 2005 WL 763233, at *4 (Tex. App.—San Antonio Apr. 6, 2005, pet. ref'd) (mem. op., not designated for publication) (holding that medical records are not testimonial). We therefore overrule Patel's fourth point.

## VII. CONCLUSION

Having overruled Patel's four points, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL: LIVINGSTON, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 21, 2009