Stephen Ray FERGUSON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 61706, 61707.

Court of Criminal Appeals of Texas, Panel No. 1.

June 16, 1982.

W. John Allison, Jr., on appeal only, Dallas, for appellant.

Henry Wade, Dist. Atty., Stanley E. Keeton and Will Wilson, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Consolidated for purposes of hearing and trial respectively, Cause No. 61,706 is an appeal from an order revoking probation granted after a conviction for the offense of burglary with intent to commit rape—assessing punishment at six years confinement in the Texas Department of Corrections and imposing sentence accordingly, and Cause No. 61,707 is an appeal from a judgment of conviction for the offense of "criminal trespass *of* a habitation"[1] in which punishment was assessed at confinement for one year in the Dallas County Jail and a fine in the amount of one thousand dollars. The latter period of confinement was expressly ordered to commence after the six year sentence had been served.

■ The proceedings thus joined for hearing a motion to revoke probation alleging appellant had violated the condition of probation that he commit no offense against the laws in that he had committed the offense of attempted burglary of a habitation occupied by Marla Berwald with intent to commit theft,[2] and for trial an indictment that alleged conduct constituting attempted burglary in substantially the same terms as the motion to revoke.[3] Repeated manifestations of symptoms of voyeurism on the part of appellant were shown[4] and since sufficiency of the evi-

---

1. Both the judgment and sentence so denominate the offense. V.T.C.A.Penal Code, § 30.05 denounces as a criminal trespasser one who "enters or remains *on* property or *in* a building of another without effective consent" when he had "notice that entry was forbidden or received notice to depart but failed to do so." The offense is a Class B misdemeanor unless, *inter alia*, "it is committed *in* a habitation," and then it is a Class A misdemeanor. (All emphasis is supplied by the writer of this opinion unless otherwise indicated.)

2. Specifically the motion alleged that on or about September 11, 1978 in Dallas County appellant did "knowingly, intentionally and without the effective consent of Marla Berwald, the owner thereof, attempt to enter a building, then and there a habitation occupied by the said Marla Berwald, not then and there open to the public, with the intent to commit theft..."

3. The indictment alleged that on or about September 11, 1978 in Dallas County appellant did "with specific intent to commit the offense of burglary, attempt to enter a habitation, by knowingly and intentionally break [sic] a window, without the effective consent of Marla Berwald, the owner of the property, and with intent to commit theft; said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended..." See V.T.C.A.Penal Code, § 15.-01(a).

   In his second "proposition of law" appellant contends this indictment is fundamentally defective for failure to allege a culpable mental state in that it does not charge that appellant "knowingly and intentionally attempted to enter a habitation with intent to commit theft." However, the essence of an attempt offense is the doing of more than a preparatory act with specific intent to commit some offense, in this case burglary. We believe the indictment is not subject to the criticism leveled against it, and certainly it is not fatally deficient for in tracking the language of the statute it charges substantially that which appellant says is missing, albeit in greater detail. See *Williams v. State*, 544 S.W.2d 428 (Tex.Cr.App.1976); see also *Jones v. State*, 576 S.W.2d 393 (Tex.Cr.App.1979). Proposition two is rejected.

4. A clinical psychologist testified that appellant suffered from "a passive-aggressive, passive-dependent personality disorder" and, secondarily, from "episodic excessive drinking."

dence is challenged it is necessary that we recount the one in issue.

On Southwestern Boulevard in Dallas is a large complex of apartment buildings. Marla Berwald lived with Sharon Ochoa in ground floor apartment number 1248; on the second floor just above, Randy Carter resided in apartment number 2248. At 2:30 a. m. on the morning in question Carter was walking along a sidewalk near their apartment building when he saw a man, who turned out to be appellant, looking across a patio area related to the Berwald apartment at a glass door;[5] Carter "kind of walked right up to him before he noticed me, and then he kind of turned away." Carter continued on his way to a stairway to the second floor and to his own apartment.

Troubled by what he had observed, as soon as he was in his own apartment Carter went to a window and looked for the man. Sure enough Carter spotted appellant kneeling down by and looking into a window of the Berwald apartment immediately below.[6] Meanwhile, sitting on a bed in her lighted bedroom, clad only in underclothes, Berwald was writing checks; she heard a noise at her window "like a scratch," but thinking it might be merely wind she paid little attention. About five minutes later she heard a louder sound like "scratching" at the window screen and, putting on a robe, she went to the window, opened the drape a bit and looked out across the way, seeing nothing unusual—just grass and sidewalk. Then she lowered her gaze to the small area between some "bushes" and the side of the building, and there was appellant "sitting down" below the window with his hands right on the ledge. Two and a

half feet apart, face to face, she and appellant stared at each other for what seemed like "a couple of minutes." Berwald demanded to know "what in the hell are you doing down there?" When she got no response from the "very scared" appearing appellant, Berwald announced she was going to call the police, and left the window to do so. But she was too nervous to dial properly; so, yelling to her, Berwald rushed to the bedroom of Sharon Ochoa and tried to shake her awake. Then Berwald heard the sound of the window being broken and the voice of Carter as he shouted at appellant.

Looking down from his own window Carter had been watching every move by appellant. He observed appellant walk from the patio fence, step beyond the bushes to the window of the Berwald bedroom, kneel down and look in, take off its screen and roughly throw it down in the bushes and turn back to look through the window. After what seemed like about five minutes Carter saw appellant strike the upper part of the window with the palm of his hand, and break the glass. Carter raised his window and yelled. Appellant began to run away and Carter left his apartment to chase him.

Shortly, peace officers arrived and soon located appellant hiding under a pickup truck on the apartment complex parking lot; after a brief bit of running again, appellant was apprehended. Appellant was intoxicated and there was blood from a small cut on one of his hands.

Testifying in his own behalf appellant claimed to have been highly intoxicated, related that his objective at the apartment complex was "window peeping,"[7] admitted

Though in his past appellant had been involved in "some incidents of voyeurism," the psychologist refused to catagorize appellant as a voyeur.

5.  A wooden fence "about waist high" is around parts of the patio area, and Carter explained that appellant was not inside the patio but was "just kind of looking over the fence."

6.  To reach that location Berwald pointed out, "He had to climb over some of the bushes

before he got to where he was . . . to walk over them or jump over them or do something." The space between the line of bushes and the window where appellant knelt down is "about a foot" deep.

7.  On cross examination appellant recounted engaging in similar nightly missions "maybe twice a month or so" in various places throughout the Dallas metroplex, seeking to discover women undressing in lighted rooms.

his presence and essential movements described by Carter and Berwald, including crouching by and looking through her window at Berwald; however, he professed not to remember removing the screen but conceded breaking the window—"out of fear," he said—and denied any intent to enter the apartment or to steal.

As indicated at the outset, the trial court declined to find that appellant had committed the offense of burglary as alleged, determining instead that his conduct constituted criminal trespass, and in the revocation case also disorderly conduct[8] and criminal mischief.[9] Appellant contends that the evidence is not sufficient to show a forbidden entry in that it does not show an intrusion of his entire body in the habitation of Berwald, as required by § 30.05(a), (b)(1) and (c). The State avoids meeting that contention headon, invoking instead "the well-recognized principle of law that a conviction of a lesser grade of offense will be sustained even though the evidence shows a greater offense has been committed," citing, *inter alia, Burks v. State*, 510 S.W.2d 321 (Tex.Cr.App.1974) and *McDonald v. State*, 462 S.W.2d 40 (Tex.Cr.App.1974).

The problem with the State's position is that, as the trier of fact, in finding appellant committed criminal trespass the trial court acquitted appellant of the offense of attempted burglary, and even if permitted to do so we cannot find from the testimony enough evidence to show that the greater offense of attempted burglary was committed, for what is lacking is that appellant had the requisite intent to commit the offense of burglary. See *Day v. State*, 532 S.W.2d 302 (Tex.Cr.App.1975). Appellant's contention must be addressed squarely.

Patently, appellant did not intrude his entire body in (into or within) the apartment occupied by Berwald and Ochoa. In

supplementing burglary or attempted burglary offenses, we are told by the Practice Commentary following § 30.05 that one function of a trespass offense "is performed when the trespassory entry is *into* a habitation," and because of the likely consequence of fright "trespasses *into* habitations are treated more harshly—as Class A misdemeanors." Still, the trial court found the latter trespass occurred in that appellant "did enter into a fenced enclosure and up to the patio door, and that he did look into and through the patio door and that he did leave that position and go to a window, and that he did look into this window, and that he also broke the window." With deference we are unable to agree with those findings regarding appellant's presence on the patio.

Carter is the sole witness to that aspect of the conduct of appellant. Approaching on a sidewalk he saw appellant and walked "right past him in the light," observing his "face, hair, mustache and what he was wearing." The patio has "a wooden fence around it, but it's only about waist high, and he was standing directly in front of it looking in the sliding glass doors"—he was "just kind of looking *over the fence.*" Though the patio and its fence may be a "structure appurtenant to or connected with" the apartment, V.T.C.A.Penal Code, § 30.01(1)(B), there is simply no evidence that appellant did enter beyond the waist-high fence onto the patio. Appellant's contention must, therefore, be sustained.

The contention we have just sustained is made under a ground that asserts abuse of discretion by the trial court in revoking appellant's probation in Cause No. 61,706, as well as another ground that the evidence is insufficient to sustain the conviction in Cause No. 61,707. The question that now recurs is what is the correct disposition of the causes, and we turn to answer separately in each one.

---

8. V.T.C.A.Penal Code, § 42.01(a)(7) makes it an offense for a person intentionally or knowingly to enter on the property of another and for a lewd or unlawful purpose to look into a dwelling on the property through any window or other opening in the dwelling. It is a Class C misdemeanor, *id.*, (d).

9. According to V.T.C.A.Penal Code, § 28.-03(a)(1) one commits an offense when, without the effective consent of the owner, he intentionally or knowingly damages or destroys the tangible property of the owner. If the amount of loss is less than five dollars, as the court found here, the offense is a Class C misdemeanor, *id.*, (b).

In Cause No. 61,706 the court did not abuse its discretion. The general finding made by the court in its order revoking probation is that appellant violated condition (a) that he commit no offense against the laws of this state et cetera. The evidence preponderates in support of that finding though it does not show appellant committed criminal trespass *of a habitation*, as a lesser included offense of attempted burglary. The evidence will support a conclusion that appellant committed criminal trespass on property of another, as lower lesser included offense of attempted burglary, in that without effective consent he left the sidewalk along the apartment building, crossed beyond the line of bushes designed to exclude intruders and, intruding his entire body in the small space, removed the screen, peered through the window and ultimately broke the top part of it out. Moreover, appellant practically admitted and the court expressly found that his conduct was disorderly in the sense that "window peeping" is said to be by the statute and, further, the court concluded that his breaking the window amounted to criminal mischief.[10] We hold that each is an incident of the greater offense of attempted burglary of a habitation, according to the proof by breaking a window, because "necessarily included within the allegations of that [which is] alleged in the motion to revoke," *Pickett v. State*, 542 S.W.2d 868, 870 (Tex.Cr.App. 1976), quoted approvingly in *Cleland v. State*, 572 S.W.2d 673, 675 (Tex.Cr.App. 1978).

In Cause No. 61,707, having determined the evidence is insufficient to support a finding of guilty of the offense of criminal trespass of a habitation, a Class A misdemeanor, we must reverse the judgment with an order of acquittal of that offense. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and

*Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

The order revoking probation and imposing sentence in Cause No. 61,706 is affirmed.

The judgment of conviction of the offense of criminal trespass of a habitation in Cause No. 61,707 is reversed and appellant is ordered acquitted of that offense.

---

10. In making the latter two findings the trial court without objection ordered that the motion to revoke be amended to add therein allegations of such respective offenses. Similar procedure was suggested by the Court in *Garcia v. State*, 571 S.W.2d 896, 899, n. 5 (Tex.Cr. App.1978). As implemented in the case at bar the procedures immunize the additional findings from the complaint, included in appellant's argument under this ground, that "disorderly conduct and malicious mischief were not part of the State's Motion to Revoke Appellant's Probation."