COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ADRIAN ESCOBEDO, | | No. 08-08-00318-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 168th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20070D03503) |
| | § | |

## **O P I N I O N**

Adrian Escobedo was charged by indictment with tampering with government records. The trial court denied his motion to suppress. Appellant pled guilty to the indictment and was sentenced to two years' confinement in the Texas Department of Criminal Justice, Institutional Division, probated for two years. At issue is the denial of his motion to suppress. For the reasons that follow, we affirm.

## **FACTUAL BACKGROUND**

Appellant filed a pretrial motion to suppress evidence. At the hearing, Officer Balderrama testified that he and his partner, Officer Chapa, were dispatched to an apartment complex regarding an unknown problem. The officers met with Raquel Graciano and her 14-year-old son, Christian Silva, about a family disturbance. Appellant was not at the apartment.

Officer Balderrama spoke with Christian. The boy explained that there had been an argument and that Appellant had created a mess in the apartment. Christian also described how Appellant

broke into cars. He had some "stickers" and he would cut and change the numbers.[1] Christian then went into the apartment, retrieved the stickers, came back outside, and handed the stickers to the officer. Balderrama did not ask Christian to bring him the stickers but he observed the boy grab the stickers from a living room closet approximately five feet from the open front door of the apartment. Balderrama turned the stickers into evidence and completed his report.

On cross-examination, Balderrama testified that his reason for being at the residence was in response to a 911 call. Graciano and Christian were outside the apartment when he arrived. Balderrama spoke with Christian and asked him what happened. Christian told him about an argument and that Appellant was throwing milk, dropping tables, breaking into cars, and that he had stickers. After Christian handed the stickers to Balderrama, Graciano told him he was going to get in trouble with Appellant because the closet belonged to him. Balderrama did not enter the apartment.

Graciano testified that Appellant had lived with her at the apartment for approximately five months. He was not home when the police arrived. Her son went outside first, and she followed him. She denied fighting with Appellant, and described an argument with her children over some spilled cereal. The police did not ask permission to talk to Christian and she did not see the police enter her apartment. The closet had a chain lock that had been broken by her kids. Everything in the closet belonged to Appellant. Graciano did not give Christian permission to get anything from the closet and she did not consent to a search of her home. She asked her son why he took something that did not belong to him. But she did not physically stop him from giving the documents to the police because she had gone back inside.

At the close of the evidence, the trial court entered a finding that although Appellant had an

---

[1] The record reveals that the "stickers" were fraudulent Texas automobile registration decals.

expectation of privacy, "the police never entered the home, never entered the residence." The judge

denied the motion to suppress and entered the following findings on the record:

> The officer was at the residence investigating the disturbance. The officer was not there investigating the activity of having illegal stickers. The officer did not direct the young boy to go and retrieve the stickers, but rather, the young boy volunteered the fact that the stickers were there and volunteered to go get the stickers. Therefore, there was no search, which was the court's previous finding. But the additional finding that I need to make today is that the child was not acting as an agent because the activities of the young man occurred before the officer even knew about the illegality of the stickers that were there. But it was at the action of the child that then the officer became aware of the fact that there were illegal stickers.

## MOTION TO SUPPRESS

In his sole issue for review, Appellant argues that the trial court erred in denying his motion

to suppress.

### Standard of Review

We review a trial court's ruling on a motion to suppress using the bifurcated standard of

review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Carmouche v.*

*State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El

Paso 2002, pet. ref'd). Because the trial judge is the sole trier of fact regarding the credibility of and

the weight to be given to a witness's testimony, we do not engage in our own factual review of the

trial court's decision. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Romero v.*

*State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Almost total deference is given to the trial

court's ruling on questions of historical fact and application of law to fact questions that turn on an

evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App.

2006), *citing Guzman*, 955 S.W.2d at 89. A trial court's rulings on mixed questions of law and fact

that do not turn on the credibility and demeanor of witnesses are reviewed *de novo*. *Id*.

### Agent of the State

The trial court found that Christian was not acting as an agent of the State when he obtained the stickers from the closet and turned them over to Balderrama. This is a mixed question of law and fact that does not turn on the credibility and demeanor of a witness which we review *de novo.*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. For the purposes of the Fourth Amendment, a "search" occurs when the government violates a subjective expectation of privacy that society considers objectively reasonable. *See Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 2042-43, 150 L.Ed.2d 94 (2001). However, the Fourth Amendment proscribes only governmental action, not action by a private individual who is not acting as an agent of the government or with the knowledge and participation of a government official. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Even a wrongful search or seizure by a private citizen does not deprive the government of the right to use evidence obtained from the wrongful search. *See Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980).

The government may not encourage conduct by private persons that the government itself cannot do, and if the government encourages a search, or the private citizen searches solely for the purpose of aiding in law enforcement, the search is illegal. *Morrow v. State*, 757 S.W.2d 484, 489 (Tex.App.--Houston [1st Dist.] 1988, pet. ref'd), *citing Coolidge v. New Hampshire*, 403 U.S. 443, 488, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971). To determine whether a person is acting as an "instrument" or agent of the government, we ask (1) whether the government knew of, and acquiesced in, the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or, instead, to further his own ends. *Stoker v. State*, 788 S.W.2d 1, 11 (Tex.Crim.App. 1989). *De minimis* or incidental contacts between the citizen and law enforcement

agents before or during the course of a search or seizure will not subject the search to Fourth Amendment scrutiny. *United States v. Walther*, 652 F.2d 788, 791 (9th Cir.1981).

## ANALYSIS

We conduct our analysis of this question on a case-by-case basis in light of all the circumstances. *United States v. Hall*, 142 F.3d 988, 993 (7th Cir.1998). The defendant bears the burden of proving that a private party acted as an agent of the government. *United States v. Feffer*, 831 F.2d 734, 737 (7th Cir.1987).

We begin with *Dawson v. State*, 106 S.W.3d 388, 390 (Tex.App.--Houston [1st Dist.] 2003, no pet.). There, a motel manager was concerned about the amount of traffic in and out of a room. He told a police officer his suspicions about illegal drug activity he believed to be occurring. *Id*. The same officer would intermittently stop by the motel to get some coffee or use the restroom. *Id*. On one such occasion, the manager invited the officer to check on the room. *Id*. at 391. The manager entered the room, took a look around, and changed the lock. *Id*. The officer was standing near the door when this happened and smelled the odor of burnt marijuana. The officer obtained a search warrant, which he executed two days later, and found marijuana, cocaine, and drug paraphernalia in the room. *Id*. On appeal, the defendant argued that the motel manager was acting as an agent of the police and his entry into the room was pretextual. Therefore, the cocaine later discovered was the fruit of an illegal search. *Id*. The court found that the manager initiated the entry into the room for the purpose of checking for damage or abandonment; that the officer did not ask the manager to enter the room; and that the officer did not cross the threshold. *Id*. at 392. The earlier conversations between the manager and the officer regarding the drug activity were found to be sufficiently general and remote to constitute only *de minimis* contact. *Id*. The manager had a legitimate reason to enter the room, and that the record indicated that his entry was intended to

further his own ends as a manager, not to further the State's ends. *Id*. The court concluded that the trial court did not abuse its discretion in denying the motion to suppress. *Id*. at 393.

Similarly, in *Stoker v. State*, 788 S.W.2d 1, 11 (Tex.Crim.App. 1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), a confidential informant was arranging drug transactions with the defendant when he discovered that the defendant had a pistol used in some armed robberies and murders. The informant initiated a conversation with a deputy concerning the defendant's possession of a weapon that had been used in criminal conduct. *Id*. The deputy told the informant, "if you ever acquire it, I would like to see it." *Id*. The officer did not instruct the informant on how to obtain the weapon, or even that he should obtain it. *Id*. The court found that since law enforcement officials did not direct the informant to retrieve the weapon, and had no reason to know that he would enter the defendant's home to acquire it, the court could not conclude that the state "knew of or acquiesced in the intrusive conduct." *Id*.

And in *United States v. Crowley*, 285 F.3d 553, 558 (7th Cir. 2002), federal authorities notified local delivery services to watch for suspicious packages addressed to the defendant. A UPS driver noticed such a package while making deliveries and opened it. *Id*. at 556. The driver re-wrapped it and contacted local law enforcement. *Id*. Two narcotics officers responded and met with the driver in the back of the truck. While the agents were momentarily distracted by an approaching vehicle, the driver reopened the package and showed the content to the officers. *Id*. The officers obtained a search warrant. *Id*. The defendant moved to suppress the package on the grounds the driver was an agent of law enforcement. *Id*. at 558. The trial court disagreed, finding that the driver was "acting on her own, without having received any direction from the police." *Id*. at 557. The appellate court held that the officers neither encouraged nor induced the driver to open the package

and determined that the driver was not a government agent. *Id.* at 559.

Appellant argues that Christian had no reason to enter into his closet and retrieve the evidence other than to further an investigation by the police. The record shows that Balderrama questioned Christian and Christian reported the illegal activity. But the record does not show, and the trial court did not find, that Balderrama directed or induced Christian to retrieve the stickers. The boy voluntarily gave the stickers to the officer. *See Dawson*, 106 S.W.3d 392; *Crowley*, 285 F.3d 556. We conclude that Christian did not act as an instrument or agent of the government because Balderrama did not anticipate or acquiesce in the intrusive conduct. *See Stoker*, 788 S.W.2d 11.

*Article 38.23*

In the alternative, Appellant argues that the search and seizure was illegal under Article 38.23 of the Texas Rules of Criminal Procedure. Article 38.23 states in relevant part that "[n]o evidence obtained by an officer or other person in violation of any provisions . . . or laws of the United States of America, shall be admitted in evidence against the accused." TEX.CODE CRIM.PROC.ANN. art. 38.23(a)(Vernon 2005). Appellant maintains that Christian violated Section 30.05 and Section 30.02 of the Texas Penal Code such that the evidence should be excluded. We disagree because the required elements of these crimes are not met. With regard to criminal trespass under Section 30.05, the offense requires intrusion of the entire body. TEX.PENAL CODE ANN. § 30.05(a)(Vernon 2003); *Ferguson v. State*, 634 S.W.2d 306, 309 (Tex.Crim.App. 1982). The record indicates that Christian lived in the apartment, the closet was located in the living room, and it was approximately five feet from the front door. Christian simply opened the closet and grabbed the stickers. As for the offense of burglary in violation of Section 30.02, a person commits an offense if he either: (1) enters a habitation with intent to commit a theft; or (2) enters a habitation and commits theft. TEX.PENAL CODE ANN. § 30.02(a). Turning over evidence to law enforcement can negate the criminal-intent

element required for theft. *Stone v. State*, 574 S.W.2d 85 (Tex.Crim.App. 1978)(babysitter's action in turning over photographs to the police negated any inference that she sought to deprive the defendant of his property); *Jenschke v. State*, 147 S.W.3d 398 (Tex.Crim.App. 2004). By immediately turning over the stickers to the police, Christian lacked the requisite intent to commit theft necessary to commit the offense of burglary. Finding no abuse of discretion, we overrule the sole point and affirm the judgment of the trial court.

June 30, 2010

                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.
Rivera, J., not participating

(Do Not Publish)