

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00054-CR

| | | |
|---|---|---|
| Antonio Grimaldo, Jr. | § | From County Criminal Court No. 2 |
| | § | of Denton County (CR-2011-00365-B) |
| v. | § | November 21, 2012 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Lee Ann Dauphinot



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-12-00054-CR

ANTONIO GRIMALDO, JR.                                   APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury found Appellant Antonio Grimaldo Jr. guilty of driving while intoxicated (DWI) and assessed his punishment at 180 days' confinement and a fine of $2,500. The trial court sentenced him accordingly, and he now appeals. In two issues, Appellant argues that the trial court reversibly erred by admitting evidence concerning the results of a laboratory test of a blood specimen during the guilt phase of the trial in violation of the Confrontation Clause of the Sixth Amendment to

---

[1]*See* Tex. R. App. P. 47.4.

[2]541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004).

the Constitution of the United States. Because we hold that the trial court committed no reversible error, we affirm the trial court's judgment.

On October 30, 2010, Denton police officer Daryn Briggs observed Appellant's vehicle cross over the fog line on the highway, exit the highway, cross over two lanes on the service road, and enter a parking lot. At trial, Briggs testified that he stopped the vehicle and, upon speaking with Appellant, noticed an odor of alcohol on Appellant's breath. Briggs also noticed that Appellant had glassy and dilated eyes. Briggs asked Appellant where he had been traveling from, and Appellant answered that he had given some friends a ride home from a bar at which he had consumed four or five sixteen-ounce beers over the course of the evening.

Briggs attempted to administer field sobriety tests, but Appellant refused them, including the horizontal gaze nystagmus test, on the ground that he was unable to perform them due to back, leg, and shoulder injuries that he had sustained during military service. Briggs arrested Appellant for DWI.

Another officer, Brandon Harrison, transported Appellant to the jail. At the jail, Appellant refused to give a breath sample for the intoxilyzer machine. Briggs obtained a warrant for Appellant's blood, and Appellant was taken to the hospital by Officer Gary Craig. Craig testified that at the hospital, he opened the blood kit, gave the vial to the phlebotomist, filled out the paperwork, sealed the blood sample, and returned it to Briggs. Briggs testified that he placed the blood vial in the evidence locker at the police department.

3

Heather Carpenter, the lab assistant at the hospital who drew Appellant's blood on the morning of his arrest, testified that she drew Appellant's blood, gave the vial back to the officer, and watched him seal the box.

Chris Youngkin, the forensic scientist who analyzed the blood sample, testified that when evidence is received at the lab, one of the evidence technicians assigns it a case number and checks the box to make sure that it is sealed. Youngkin stated that before he tests a sample, an evidence technician or manager gives him access to the storage vault, and when he retrieves a sample, he checks that he has the right case number and whether the kit is sealed.

Appellant objected to further testimony from Youngkin on the ground that he had not had the opportunity to cross-examine the lab technician who received the evidence. Paperwork showed that technician Lisa Perry received the sample at issue. Perry was not called to testify at trial. The trial court overruled Appellant's objection to the admission of the blood test results.

Youngkin then testified that the analysis of Appellant's sample showed a blood alcohol concentration of 0.15. The State moved to admit the blood kit box. Appellant objected that there was writing on the box's seal and that Youngkin did not know who made the writing. Appellant objected "on confrontation grounds, to the writing on the outside of that box especially the part that has the date of November 1st of 2010." Appellant stated that "the problem is that somebody wrote 'November 1st, 2010,' on that seal. That is inconsistent," and that "[w]e've got testimony from other people saying . . . [Craig] sealed the box on October 31st." Appellant argued

4

that the writing was testimonial and that he was entitled to cross-examine whoever wrote that date on the box. The trial court overruled Appellant's objection and admitted the box.

On cross-examination, Appellant asked Youngkin about the additional writing. Youngkin read the initials as "MGM," and he stated that he "believe[d] that it's Gabriella Moore with the Denton Police Department." Youngkin acknowledged that from the initials, it appeared that someone had resealed the box on November 1. He did not know why the box had been unsealed and resealed.

Appellant's complaint refers only to the denial of his right to confront and cross-examine nontestifying declarants' out-of-court testimonial factual statements at his criminal trial without a showing that the declarants were unavailable or that he had a prior opportunity to cross-examine them. Regarding the notations on the box, he argues,

> The various written out-of-court statements that appeared on the exterior of the blood specimen box (State's Exhibit 5), which were inscribed by a person whom Youngkin conceded he could not identify, were likewise "testimonial" for purposes of Confrontation Clause analysis. Specifically, the seal was inscribed with an assertion that the blood specimen box had been sealed on "November 1, 2010." Such a statement of fact constituted "the precise testimony that the [Declarant] would be expected to provide if called at trial." This inscription on the exterior of the blood specimen box, as well as others that appeared on the box, are no different from Craig's in-court testimony that he personally sealed, and inscribed his own initials over, the seal he placed on the blood specimen box, *on October 31, 2010*.

In a footnote, Appellant states,

> It is notable that Craig's testimony, wherein he stated that he sealed and initialed the box on October 31, 2010, and that the box was

5

not re-opened prior to its arrival at the laboratory, directly conflicts with the inscription on the exterior of the box, which discloses that the box was later sealed (by an unknown individual) on November 1, 2010, long before its arrival at any laboratory.

Appellant then states,

> The fact that the written out-of-court statements which appeared on the exterior of the blood specimen box (State's Exhibit 5) may have been intended to prove a "chain of custody" does not render the statements any less "testimonial" for purposes of Confrontation Clause analysis. The same is true to the extent that other statements about which [Appellant] complains might be fairly characterized as only "chain of custody" statements.

Appellant does not appear to complain that anyone tampered with the blood sample or that the notations indicated any tampering. Appellant argues, though, that the notations are testimonial and that, because the scrivener of the notations did not testify in court, Appellant was denied the opportunity to confront and cross-examine the witness in violation of *Crawford v. Washington.*[2]

Regarding the alleged testimonial statements of Lisa Perry, Appellant argues that he was denied the right to confront her because

> Youngkin's testimony at trial, which vouched for the veracity of and reiterated the factual statements attributed to non-testifying Declarant Lisa Perry (and about which he had no personal knowledge), w[as] "testimonial" for the purposes of Confrontation Clause analysis. Youngkin testified that . . . "Lisa Perry" personally received the blood specimen box at his laboratory; that "Lisa Perry" placed the blood specimen box in a refrigerator; and that the blood specimen box was "sealed" at the time "Lisa Perry" received it at the laboratory. The same is true of the statements contained in State's Exhibit 6, a laboratory report wherein Youngkin stated in writing as fact (but without personal knowledge) that his laboratory had received "blood from

---

[2]541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004).

6

[Appellant]" . . . ; and that [Appellant's] blood specimen had been "submitted" on "November 12, 2010."

As Appellant concedes, the notations and references to receipt of the blood and the source of the sample establish the chain of custody of the blood.[3] Appellant also candidly concedes that the *Melendez-Diaz* court stated that, although the prosecution is obligated to establish the chain of custody, "this does not mean that everyone who laid hands on the evidence must be called. . . ."[4]

But Appellant argues that because the State offered the notations and references to what nontestifying witnesses would have testified to, the State must have considered the notations and testimony crucial to establishing the chain of custody. The record reflects that Craig, a police officer, testified that he took Appellant to the hospital for the lab draw. Carpenter, a lab assistant, testified that she performed the blood draw on Appellant. Craig testified that he sealed the box containing Appellant's blood, returned Appellant to the jail, and took the sealed box containing the blood to Briggs to be placed in the evidence locker. Craig also identified his seal in court. Briggs testified that he received the blood vial from Craig and placed it in the locked evidence locker.

---

[3] *See* Tex. R. Evid. 901(a); *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 951 (1990), *disapproved of on other grounds*, *Leday v. State*, 983 S.W.2d 713, 716 n.2 (Tex. Crim. App. 1998).

[4] *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1, 129 S. Ct. 2527, 2532 n.1 (2009).

Youngkin testified that he removed the blood from the refrigerator in the vault in his laboratory, checked the unique number assigned to the sample, and tested the blood sample. He was unable to testify from personal knowledge to the name of the person who transported the sample from the police department to the laboratory. Nor could he testify from personal knowledge who actually received the blood sample at the lab and placed it in the refrigerator. He was able to testify about normal procedures in the lab and signatures and initials on transmittal sheets and other documentation.

Appellant points out that although the blood draw took place on October 31, 2010, the blood was not transported to the Texas Department of Public Safety lab in Garland until November 12, 2010. Yet, the seal on the blood specimen box was inscribed with an assertion that the blood specimen box had been sealed on November 1, 2010, although Officer Craig testified that he personally sealed and inscribed his own initials over the seal he placed on the blood specimen box on October 31, 2010. The November 1 date raises the question of whether the box was opened between the time Craig sealed the box and the time it was opened in the lab on November 12. Nevertheless, the State argues that the unexplained date on the blood kit box had no testimonial purpose pertaining to Appellant's blood test results.

Regarding Perry, Appellant argues that her statements were testimonial because they were clearly intended for use in court. The State argues that the responsibilities of nontestifying lab technicians are stenographic and procedural in

8

nature and not analytical in any sense. The State argues that the information recorded by the technician served a purpose in the chain of custody but that it served no role in how the evidence was tested or how the test results were interpreted.

While common sense might tell us that it is important to know who handled the evidence in question and how it was handled because it was subjected to scientific tests, the Supreme Court of the United States has held that every person who handles the evidence does not have to appear in court.[5] We hold that the same is true about the presence of an additional date and set of initials placed on a container of the vial of blood when there is no accusation of tampering with the evidence and both ends of the chain of custody are established—not every link in the chain of custody must be identified in court.

We agree with Appellant that the notations and the statements of what nontestifying witnesses would have testified to are testimonial in nature. But the erroneous admission of testimonial statements of non-testifying witnesses does not always require reversal. The Sixth Amendment to the Constitution of the United States provides,

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses

---

[5]*Id.*

9

*against him*; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.[6]

At play for Appellant, then, is the interrelationship between the Sixth Amendment right to confront *witnesses against him*, the right to compulsory process for obtaining witnesses in his favor, the right to effective assistance of counsel, and the rules of evidence dealing with hearsay. Appellant has not shown that whoever made the November 1 notation on the box containing the blood sample was a witness against him, as opposed to a witness reporting a mere clerical act. Nor has he shown that Lisa Perry was a witness against him, as opposed to a witness reporting an objective fact that was not evidence "against" him. Instead, Appellant appears to complain of gaps in the chain of custody that were filled by hearsay statements. We cannot agree that these gaps and hearsay statements triggered the Sixth Amendment right to confront witnesses against Appellant. He does not argue that he was denied compulsory process or effective representation, nor does he show how the admission of the hearsay statements or notations requires reversal.

---

[6]U.S. Const. amend. VI (emphasis added).

Based on the record before this court and arguments in the trial court and on appeal, we hold that Appellant has not shown that he was denied the right to confront witnesses against him as contemplated by the Sixth Amendment to the Constitution of the United States. We therefore overrule Appellant's two issues and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 21, 2012

11