**Opinion issued August 25, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-13-00269-CR**

———————————

**ROBIN LYNN PRINCE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1266918**

---

**MEMORANDUM OPINION**

Appellant Robin Lynn Prince was charged with murder, enhanced with two prior felony convictions. *See* TEX. PENAL CODE § 19.02. He pleaded "not guilty." A jury found Prince guilty, and the trial court sentenced him to 50 years in prison. He appeals his conviction. We affirm.

**Background**

Prince was romantically involved with two different women: Katie Sheppard and complainant Christina Lewis. A sexual tryst involving all three resulted in animosity among the trio.

In a subsequent encounter, Lewis was entertaining Prince at her home when she yelled for her roommate, Larry Shaw, accusing Prince of trying to rape her. Days later, Sheppard drove Prince to his brother's house so he could check whether there were any outstanding warrants out for his arrest. Afterwards, the two drove to a nearby park to meet with Lewis. There, they discussed whether Lewis intended to report an allegation of sexual assault by Prince.

Prince accompanied Sheppard to her home that night. After midnight, they drove to Lewis's home. Sheppard waited in the car while Prince went inside to see Lewis. The two were heard arguing by Lewis's roommate, but he went to bed after Lewis told him everything was fine. After waiting outside for more than an hour, Sheppard approached the home. Prince emerged with Lewis, who told him to "go be with that bitch." He pushed her back inside.

Sheppard again waited outside, but she grew impatient and approached the home once more. This time, Prince opened the door and said, "I'll be right there, baby." He came out 10 to 15 minutes later with his shirt thrown over his shoulder. After they departed, Sheppard stopped the car so Prince could open the trunk. She

2

did not understand why he needed to open the trunk of the car, and she did not see him remove anything from the trunk. But she noticed that he seemed anxious and paranoid.

Upon returning to his home, Prince washed his hands before going back out to the trunk of the car. Next, he took a shower and then returned outside to burn his clothes. Sheppard, who had been trying to sleep, asked why he was burning his clothes. Prince replied, "Just in case there's something on them." When she asked him what was going on, he responded that Lewis "might be dead" because there was "somebody else in the house." Hours later, Shaw found Lewis dead on her bed with a large cut to her neck.

The next morning, Prince called Sheppard's stepfather and asked whether the police had been looking for him. During that conversation, Prince stated that he and Lewis fought, he stabbed her with a knife, and it was so sharp that he almost cut her head off.

Later, the police arrested Prince, who was charged with murder. While in a holdover cell awaiting trial, he saw a former neighbor, Brian Mosely. Prince told Mosely that he had gotten into a fight with Lewis and that he ended up stabbing her in the neck. When Mosely asked him how he got caught, he answered that he had gotten blood on his shirt and that Sheppard saw him.

The week before trial, the prosecutor notified defense counsel that the State intended to use the testimony of a newly disclosed witness. The State intended to call Sheppard's stepfather to testify about his conversation with Prince in the early morning hours after the altercation with Lewis. Before voir dire, Prince filed a motion for continuance based on the new witness. The motion included an exhibit containing the State's proffer of the witness's testimony, which Prince contended would be devastating to the defense.

The motion was originally denied on a Monday by a visiting judge. The next day, when the presiding judge returned to the bench, Prince renewed his motion, requesting a one-month continuance to investigate the proffered testimony. In the alternative, defense counsel asked that the witness not be allowed to testify. The court denied the motion, and instead it granted a mid-trial recess to allow the defense time for investigation.

Two days later, a hearing was held regarding the admissibility of the testimony. At the hearing, the State indicated that it also intended to proffer the testimony of Sheppard's mother. Prince renewed his motion for continuance, including concerns about the mother's proposed testimony as an additional factor. Ultimately, the court granted a short continuance, giving the defense a three-day weekend to complete its investigation. It further ruled that the testimony was admissible.

Before the witnesses' testimony, defense investigator Kelly Kuhn testified outside the presence of the jury about the length of time needed to investigate the newly disclosed witnesses. Primarily, she testified to the length of time needed to review phone calls made by Sheppard's stepfather while in jail for an unrelated offense. Kuhn explained that she had reviewed his 17 most recent calls, but she still had 67 calls to review, and that it would take at least 3 to 4 days to complete this review. Defense counsel again renewed the requests for continuance or to disallow the testimony, explaining that more time was needed to listen to the phone calls, but also acknowledging that he did not know whether anything on the phone calls was beneficial to the defense. Furthermore, defense counsel made the same requests regarding proffered testimony from Sheppard's mother, asking for more time for discovery of phone calls. The court denied both motions and allowed the witnesses to testify.

During the testimony of Sheppard's stepfather, defense counsel cross-examined him on his criminal history, including a pending felony-theft indictment that carried a recommended punishment of 25 years to life in prison. The witness denied that he had any agreement with the State for his testimony, at which point defense counsel proceeded to inquire about specific comments made on the jail phone calls turned over by the State:

Q: Do you remember saying to your wife on the phone that you were set up on this case you're in jail for so that you'd testify in this case?

A: No, sir.

. . . .

Q: . . . Do you remember saying to your wife, "They might let me out behind this?"

A: No, I don't remember saying that.

. . . .

Q: Do you remember on March 17th saying to your wife, "My lawyer goes, man, we might even be talking a dismissal, you know, on my case"? Do you remember that?

A: No, sir, I don't remember that.

Q: Did your lawyer ever tell you your case might be dismissed if you cooperate?

A: No, sir.

Q: You never made that statement to your wife?

A: I never said that.

. . . .

Q: Do you remember saying you are the star witness in this case?

A: No, sir.

Q: Do you remember on the same date saying, "Hopefully this will help my case in some way. I think it will"? Do you remember saying that?

A: No, sir, I don't.

6

Q: Do you remember at the end of that conversation saying, "My lawyer told me that they might dismiss it"? Do you remember saying that?

A: I've only spoken to my lawyer one time.

This discussion continued, and defense counsel then asked the court to allow the witness to listen to recordings of phone calls to his wife from jail. After the witness listened to the phone calls outside the presence of the jury, defense counsel impeached him on each of his statements.

Sheppard's mother testified that she found a bloody knife near her driveway. She also testified about the phone conversation that her husband had with Prince, in which Prince asked if the police had come by, and he stated that he had stabbed Lewis after a fight. Her testimony revealed a discrepancy with her husband's testimony: she claimed he told her about the call the same morning, while he had claimed that he told her about the phone call later that that night.

A jury found Prince guilty of murder, and he was sentenced to 50 years in prison. Prince moved for a new trial based on an affidavit from a bystander outside the court who averred that Sheppard's mother approached him and claimed that she knew where the murder weapon in the case was because Sheppard "threw it in the river." The mother further stated that she thought Sheppard "is a lot more involved in this than she is saying." In a subsequently filed "Motion for Inclusion in the Appellate Record," Prince included more affidavits to be considered with his

amended motion for new trial. One affidavit, from Sheppard's mother, stated that she and her daughter found a knife with blood on it near Prince's home, and that her daughter told her she tossed the knife into nearby water. The other affidavit, from defense investigator Kelly Kuhn, stated that Sheppard's mother had made the same claims to her. The trial court denied the motion for new trial, and this appeal followed.

**Analysis**

Prince challenges his conviction in six issues. He asserts that the evidence is legally insufficient to support his conviction. He argues that the State's late announcement of "surprise" witnesses resulted in abuses of the trial court's discretion in failing to grant a continuance and in allowing the witnesses to testify. He also argues that the trial court erred when it denied his motions for mistrial based on nonresponsive answers of a State's witness and on allegedly improper closing argument. He contends that the court erroneously admitted evidence that Lewis accused him of sexually assaulting her. Finally, he argues that the court erred by denying his motion for new trial based on "newly discovered" evidence that Sheppard may have been a participant to the murder.

I.    **Sufficiency of the evidence**

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we determine "whether, after viewing the evidence in the light most

8

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the fact finder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793*; Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We may not re-evaluate the weight and credibility of the evidence and thereby substitute our own judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The indictment in this case charged that Prince committed murder by "intentionally or knowingly caus[ing] the death of Christina Lewis, hereinafter called the Complainant, by stabbing and cutting the Complainant with a deadly weapon, namely, a knife." *See* TEX. PENAL CODE § 19.02. Prince contends that the evidence was insufficient to sustain his conviction for murder because no direct, physical evidence linked him to Lewis's death. Particularly, the knife used to commit the crime was never found. However, circumstantial evidence is as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App.

2007). Here, circumstantial evidence allowed a rational fact finder to find the essential elements of the crime beyond a reasonable doubt. The evidence indicated that Prince was worried and upset Lewis might file charges against him for sexual assault, providing a motive for murder. Although motive is not an element of murder, it may be a circumstance that is indicative of guilt. *Clayton*, 235 S.W.3d at 781. Inside Lewis's home on the night of her death, Shaw witnessed her fighting with Prince. Sheppard saw Prince go inside for over an hour before returning without wearing his shirt. Prince appeared nervous and paranoid, and once they returned home, he took a shower and burned his clothes. When asked why he was burning his clothes, he told Sheppard it was in case something was on them, and that he thought Lewis might be dead. Hours after Lewis was found dead, Prince called Sheppard's stepfather, asking if the cops had been looking for him and admitting to stabbing Lewis with a knife. Later, while awaiting trial in jail, Prince told Mosely that he stabbed Lewis. Cumulatively, the circumstantial evidence allowed a rational factfinder to determine that Prince intentionally and knowingly caused the death of Lewis by stabbing her with a knife.

Prince further asserts that the evidence is insufficient because numerous witnesses allegedly had past criminal convictions and biases which undermined their credibility. On this point, the State notes that Prince's trial counsel cross-examined Sheppard, Sheppard's mother, and Mosely, all of whom have past

10

criminal histories, and discussed those histories in closing argument. Moreover, the jury is entitled to judge the credibility of the witnesses, and may choose to believe or disbelieve their testimony. *Chambers*, 805 S.W.2d at 461. We may not re-evaluate the weight and credibility of that testimony. *Williams*, 235 S.W.3d at 750.

Accordingly, Prince's issue challenging the sufficiency of the evidence is overruled.

## II. "Surprise" witness issues

Prince argues that the trial court abused its discretion when it denied his motion for continuance based on the State's reliance on "surprise witnesses." He further asserts that the trial court erred when it allowed the witnesses to testify.

The standards for reviewing the decision to deny a motion for continuance and for allowing an unlisted witness to testify are similar, but distinct. Both decisions are reviewed for an abuse of discretion. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (continuance); *Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989) (unlisted witness), *abrogated on other grounds by Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998); *Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd, untimely filed) (both).

### A. Denial of motion for continuance

To establish an abuse of discretion when the trial court denies a motion for continuance, there must be a showing that the defendant was actually prejudiced by

the denial of his motion. *Gallo*, 239 S.W.3d at 764. "A bare assertion that counsel did not have adequate time to interview the State's potential witness does not alone establish prejudice. *Id*. (citing *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995).

Prince contends he was actually prejudiced by the court's decision to allow the witnesses to testify without granting his motion for a longer continuance, pointing to the impeachment of Sheppard's stepfather and to her mother's contradiction of her husband and her testimony regarding the knife. According to Prince, his trial counsel lost the opportunity to further impeach the stepfather on past conversations contained in the un-reviewed recordings of phone calls. However, Prince does not identify the contents of those tapes or suggest the basis for further impeachment. As to the mother, Prince suggests that, in light of post-trial comments made outside the courthouse in which she claimed Sheppard disposed of the knife used in the murder and that she was "more involved in this than she is saying," further time for discovery of her mobile phone conversations could have yielded impeaching or exculpatory evidence.

The State responds that such speculation does not demonstrate actual prejudice, as would be required for Prince to obtain relief. *See id.* at 764–65. We agree. Although Prince argues that further time to review recorded phone calls may have resulted in further impeachment, he does not demonstrate what that

12

impeachment may have concerned. Moreover, he cross-examined both Sheppard's stepfather and mother extensively on the issues he argues would have taken a more central role had he received the continuance. *See id*. at 765. Additionally, we note that any limitation Prince experienced in trying to review all of the evidence during trial did not prevent him from listening to all recordings and using another procedure, such as a motion for new trial, to demonstrate prejudice after the trial concluded.

Because there has been no demonstration that Prince suffered actual prejudice as a result of the trial court's denial of his motion for continuance, we conclude that the trial court did not abuse its discretion.

## B. Permission of "surprise" witness testimony

When determining whether a court abused its discretion when it allowed a witness to testify without notice to the defendant, we consider whether the prosecutor's actions constituted bad faith and the defendant reasonably could have anticipated the witness's testimony. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Stoker*, 788 S.W.2d at 15. In examining whether the defense reasonably could have anticipated the witness's testimony, we generally consider the degrees of surprise to the defendant, disadvantage inherent in that surprise, and the trial court's ability to remedy the issue, such as by granting a recess or

postponement. *Hamann v. State*, 428 S.W.3d 221, 228 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

The State argued that the first time it spoke to Sheppard's stepfather was three days before the commencement of voir dire. The next day, the State notified defense counsel of its intent to call him as a witness and offered a proffer of his expected testimony. Prince has not shown that any bad faith precipitated the State's late designation of witnesses. *See Stoker*, 788 S.W.2d at 15 (determining that no bad faith on the part of the State existed when witness was a surprise to both defendant and State). Likewise, the trial court granted a mid-trial recess to allow Prince time to investigate. Although Prince argued he could not anticipate the witnesses' testimony, that factor is not, by itself, determinative of whether the trial court abused its discretion. *Id*.

In light of the absence of bad faith and the additional time permitted for the defense to further investigate and prepare, we conclude that the trial court did not abuse its discretion in allowing the late-designated witnesses to testify.

## III. Denial of motions for mistrial

In his third and fourth issues, Prince argues that the court erred when it denied his separate motions for mistrial based first on testimony that Sheppard was "nothing but forthcoming" during her conversations with the homicide investigator, and later on the suggestion of an improper closing argument.

We review a denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We must uphold the court's ruling if it was within the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

### A. Improper bolstering of witness testimony

During the State's case-in-chief, the homicide investigator, Sgt. Clopton, testified about his discussions with Sheppard during his investigation. After Sgt. Clopton described her demeanor as "very nervous" during their conversation, the prosecutor asked him whether her demeanor changed over time. The following exchange then occurred:

| | |
|---|---|
| [Sgt. Clopton]: | She was generally scared the entire time, but she was completely forthcoming. |
| [State]: | Okay. |
| [Defense]: | Object. It's nonresponsive. |
| The Court: | Sustained. |
| [Defense]: | And ask that the Court instruct the jurors to disregard that comment. |
| The Court: | Jury's instructed to disregard the last comment made by the witness. |
| [Defense]: | And we move for a mistrial. |
| The Court: | Overruled. |

15

On appeal, Prince asserts that his motion for mistrial should have been granted because Sgt. Clopton's statement that Sheppard "was completely forthcoming" indicated to the jury that he found her to be credible, effectively bolstering her testimony.

Prince's objection was that Sgt. Clopton's testimony was "nonresponsive," not that it amounted to improper bolstering. An objection solely to the nonresponsive nature of testimony, however, is distinct from other objections that would render the testimony inadmissible:

> Not every nonresponsive answer should be stricken. It is only when the unresponsive answer is also inadmissible that it should be stricken. . . . A "nonresponsive" objection alone, however, merely informs the trial court why the objection was not made prior to the answer being given. Even after the "nonresponsive" portion of the objection is made, there remains the question of the testimony's admissibility. In this context, in order to properly exclude evidence or obtain an instruction to disregard, a party must address in its objection both the nonresponsiveness and the inadmissibility of the answer. Further, a blanket "nonresponsive" objection alone is an insufficient objection to preserve error where the response is a hybrid answer— that is, where a portion of the answer is objectionable and a portion of the answer is not objectionable.

*Jackson v. State*, 889 S.W.2d 615, 617 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (quoting *Smith v. State*, 763 S.W.2d 836, 841 (Tex. App.—Dallas 1988, pet. ref'd)). To preserve a complaint for review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). Accordingly, a motion for mistrial must be both

16

timely and specific. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). Because Prince's objection was that Sgt. Clopton's testimony was nonresponsive, not that it constituted improper bolstering, his motion for mistrial does not comport with the argument now made on appeal, which accordingly has been waived.

We overrule Prince's challenge to the denial of his motion for mistrial due to the testimony of Sgt. Clopton.

### B.    Improper jury argument

During closing argument, the prosecutor summarized the evidence, including the testimony of various witnesses. As the prosecutor discussed Sgt. Clopton's testimony, the following exchange occurred:

| [State]: | After Sergeant Clopton talked to those two people, Larry Shaw and Katie Sheppard, he knew who did it. He knew who was guilty. He met with the district attorney– |
| --- | --- |
| [Defense]: | Excuse me. I'm going to object to saying that the police officer knew who did it. |
| The Court: | Sustained. |
| [Defense]: | That's outside the record. |
| The Court: | Sustained. |
| [Defense]: | Ask the Court to instruct the jurors to disregard that, please. |
| The Court: | Disregard the last comment made by the prosecutor. |
| [Defense]: | And we move for a mistrial. |

The Court: Overruled.

Proper jury argument falls into one of four categories: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to the opposing counsel's argument; and (4) pleas for law enforcement. *Guidrey v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). To constitute error, contested jury argument must be extreme or manifestly improper, violate a mandatory statute, or inject new facts into the trial proceedings that are found to be harmful to the accused. *Sandoval*, 52 S.W.3d at 857. In most cases, an instruction to disregard improper argument is considered a sufficient response by the trial court. *See Martinez v. State*, 17 S.W.3d 677, 691 (Tex. Crim. App. 2000). Thus, a mistrial will only be required in extreme circumstances where the prejudice is incurable. *Hawkins*, 135 S.W.3d at 77.

Prince observes that it is error for a prosecutor to stress during closing argument that a homicide detective believed a defendant was the perpetrator of the crime. *See Weathersby v. State*, 627 S.W.2d 729, 730 (Tex. Crim. App. [Panel Op.] 1982). The trial court in this case correctly sustained Prince's objection to the improper argument, and it instructed the jury to disregard the testimony.

Nevertheless, Prince contends that this was an extreme case in which the instruction to disregard was insufficient because of Sgt. Clopton's "specialized

18

training, experience and prestige." Prince provides no authority for the proposition that closing argument regarding the opinion of a homicide detective is incurable in a way that argument regarding opinions of other witnesses is not. On the contrary, improper opinion testimony of law-enforcement officers is not considered to be so extreme as to withstand any curative instruction from the court. *See Huffman v. State*, 691 S.W.2d 726, 730 (Tex. App.—Austin 1985, no pet.) (holding instruction to disregard sufficient to cure error of sheriff's opinion testimony about appellant's guilt).

Accordingly, we hold that the trial court did not abuse its discretion in denying Prince's motion for mistrial for improper closing argument.

## IV. Extraneous-offense evidence

In his fifth issue, Prince argues that the trial court erred by allowing the jury to hear testimony from Shaw and Sheppard regarding Lewis's accusations that he sexually assaulted her.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement. *Casey*, 215 S.W.3d at 879.

Prince first contends that Shaw's and Sheppard's testimony amounted to inadmissible extraneous-offense evidence. Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Nevertheless, extraneous-offense evidence may be admissible when it has relevance apart from the prohibited use of character conformity. *See id.*; *Montgomery*, 810 S.W.2d at 387. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Thus, extraneous-offense testimony may be relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* TEX. R. EVID. 404(b); *Montgomery*, 810 S.W.2d at 387.

Even assuming that Shaw's and Sheppard's testimony concerned an extraneous offense, it was nevertheless relevant apart from the prohibited use of character conformity. The testimony that Prince feared sexual-assault allegations by Lewis, that he wanted to meet her in the park on the night of her death, that he wanted Sheppard to drive him to her home soon after the meeting in the park, and that Shaw witnessed him arguing with her all circumstantially demonstrate Prince's potential motive. Although motive itself is not an element of murder, it is relevant because it tends to make it more likely that the accused committed the

20

crime. *See Clayton*, 235 S.W.3d at 781 ("[A]lthough motive is not an element of murder, it may be a circumstance that is indicative of guilt."); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Because the testimony was relevant apart from prohibited character-conformity purpose, the trial court did not abuse its discretion in determining that the evidence was admissible. *See Montgomery*, 810 S.W.2d at 387.

Prince relies on a prior decision of this court, *Guana v. State*, No. 01-99-00790-CR, 2000 WL 567629, at *6 (Tex. App.—Houston [1st Dist.] May 11, 2000, pet. ref'd) (not designated for publication), for the proposition that extraneous-offense evidence of plan or scheme is inadmissible when a defendant denies committing the act. The circumstances of *Guana* are readily distinguishable. *Guana* correctly so held in an aggravated sexual assault case in which the defendant's position was that the criminal act had never occurred. *Id.* at *5–6. Here, though, the extraneous-offense evidence was relevant to prove motive in a murder case in which all parties agree that a criminal act was committed. *See Guevara*, 152 S.W.3d at 50.

Yet even if relevant testimony is admissible under Rule 404(b), a court must nevertheless exclude the testimony if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 387. Unfair prejudice refers to the tendency that a jury would decide the

case on an improper basis. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). When conducting a Rule 403 analysis, a court must balance the probative force of and the proponent's need for the evidence against (1) any tendency of the evidence to suggest decision on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will amount to undue delay. *Gigliobianco*, 210 S.W.3d at 641–42. There is a presumption that relevant evidence is more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389.

Prince contends that the State did not need the testimony to establish the elements of murder. However, as Prince himself observed when challenging the legal sufficiency of the evidence, the State lacked direct evidence that he stabbed Lewis in the throat. As circumstantial evidence of motive, the testimony constituted a significant part of the State's case against him. Prince further argues that the evidence would have influenced the jury on an improper basis. But rather than depicting him as a sexual offender, the testimony focused on Lewis's representations, not on any actions by Prince. Notably, Sheppard testified that she did not actually believe Lewis's accusations. Balancing the *Gigliobianco* factors, we conclude that the trial court did not abuse its discretion in determining that the

danger of unfair prejudice did not substantially outweigh the evidence's probative value. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42.

Accordingly, Prince's fifth issue is overruled.

## V. Denial of motion for new trial

Finally, Prince asserts that the trial court abused its discretion when it denied his motion for new trial based on newly discovered evidence that a bloody knife was found near Prince's home and hidden by Sheppard.

A trial court's decision whether to grant a new trial based on newly-discovered evidence is reviewed for an abuse of discretion. *See Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002). The Code of Criminal Procedure provides that a new trial "shall be granted to an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. art. 40.001. Under this provision, a defendant is entitled to a new trial if (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to his lack of diligence; (3) the evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). The trial court does not abuse its discretion when the prosecution's case was strong enough that

the new evidence suggested by the affidavits, even if true, would probably not be so compelling as to bring about a different result in a new trial. *Id.*

In this case, evidence that Sheppard disposed of the murder weapon, at most, impeaches her credibility. Even if accepted as true, the affidavits do not present evidence that suggests a different result would have been reached at trial about Prince's guilt with respect to the murder charge. Sheppard's mother was cross-examined on the issue of whether she feared her daughter would be charged in this case, to which she responded affirmatively. Nothing in the affidavits indicates that Prince did not commit the offense of murder. Accordingly, the trial court did not abuse its discretion when it denied Prince's motion for new trial based on newly-discovered evidence. *See Wallace*, 106 S.W.3d at 108.

Prince's sixth issue is overruled.

## Conclusion

Having overruled Prince's six appellate issues, we affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).